676 P.2d 1

**MADISON GRANITE COMPANY,**
**Petitioner Employer,**

**State Compensation Fund,**
**Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF**
**ARIZONA, Respondent,**

**Walter J. Cason, Respondent Employee.**

**No. 1 CA–IC 2903.**

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 20, 1983.

Robert K. Park, Chief Counsel, State
Compensation Fund by John A. Flood,
Phoenix, for petitioners.

Sandra Day, Chief Counsel, The Industrial Com'n of Ariz., Phoenix, for respondent.

Phillips & Lyon, P.A. by Thomas C. Whitley, Phoenix, and Ruben J. Marchosky, Jr., Pasadena, Cal., for respondent employee.

## OPINION

MEYERSON, Presiding Judge.

The primary issue in this special action is whether the administrative law judge (ALJ) correctly concluded that there was a conflict in the medical evidence and resolved the conflict by accepting the testimony of William R. Kozub, PhD, even though Kozub was not a medical doctor. For the reasons explained below, we conclude that a witness in a proceeding before the Industrial Commission (Commission) may offer medical testimony even though not a medical doctor so long as he or she possesses the necessary qualifications to be deemed an "expert" on the subject of the testimony. The facts necessary for a resolution of this matter are as follows.

## I. FACTS

Respondent Walter J. Cason suffered an injury to the lumbar region of his spine while employed with Madison Granite Company. He filed a claim for benefits which was accepted by the employer's carrier, the State Compensation Fund (carrier). Medical and compensation benefits were paid by the carrier until a notice of claim status was issued on March 20, 1981, terminating Cason's benefits with the finding of no permanent impairment as a result of the industrial injury.

Cason filed a timely request for hearing. Prior to the hearing, Cason was hospitalized with a low back problem which was ultimately diagnosed as tuberculosis of the spine. Thus, the issue at the hearing became whether this tuberculosis was causally related to the earlier industrial injury. Following hearings on January 6 and March 14, 1982, the ALJ issued his award finding Cason had sustained his burden of proof by showing that the spinal tuberculosis was causally related to the original industrial injury. The ALJ awarded Cason medical and disability benefits until such time as his physical condition became stationary. After a request for review and response were filed, the ALJ issued his decision upon review, affirming the prior award, and this special action followed.

■ Preliminarily, Cason contends that the carrier waived its right to challenge Kozub's testimony because no objection was made at the time of the hearing. Because we find that the objection has not been waived,[1] we must decide whether the ALJ correctly considered the opinion of a clinical microbiologist as expert "medical" testimony.

## II. MEDICAL TESTIMONY

The ALJ found that certain facts were uncontroverted. First, at the time of Cason's industrial injury, there was no indication of spinal tuberculosis. Second, at that time, Cason had inactive, calcified human mycobacterium residue in the right upper lobe of his lung—Cason had been previously exposed to tuberculosis. Finally, a large tubercular mass was removed from the lumbar region of Cason's spine approximately two years after the industrial injury. Thus, the question before the ALJ was whether the tubercular lesion removed from the spine was causally related to the industrial injury.

With respect to this question, there was a conflict in the testimony. Roberto Masferrel, M.D., a resident in neurosurgery, and Philip J. Rubin, M.D., a specialist in infectious disease, expressed opinions that

---

1. Cason argues that the carrier has waived its right to object to Kozub's testimony by not making the appropriate objection at the hearing. Given our decision in *Bilbrey v. Industrial Comm'n*, 27 Ariz.App. 473, 556 P.2d 27 (1976), see Section II, *infra*, the carrier could not have anticipated that the ALJ would treat Kozub as a "medical" expert. Under the circumstances, we find no waiver because the carrier preserved this issue by raising it in the memorandum of points and authorities which it filed with the request for review. A.R.S. § 23–943.A (Supp. 1983).

the relationship between the industrial injury and the subsequent tuberculosis found in Cason's spine was only a possibility. William Kozub, PhD, the head of the clinical microbiology and immunology sections of St. Luke's Medical Center, was of the opinion that although the accident did not cause the tuberculosis, there was a definite relationship between the active tuberculosis in Cason's spine and the industrial injury. Specifically, Kozub testified that the accident left the spine in a weakened condition and susceptible to the disease. Because Cason was treated with steroids for his back injury, Kozub stated that to a reasonable degree of medical probability, the use of the steroids sufficiently depressed Cason's immunity so as to cause the migration of the tubercular organism from the lung to the back. Confronted with this conflict in the testimony, the ALJ resolved the conflict by accepting the testimony of Dr. Kozub as being the only reasonable explanation for the finding of active tuberculosis in the lumbar area of the spine. We must determine whether the ALJ correctly relied upon the testimony of Kozub, even though he was not a medical doctor.

The carrier argues that only expert medical testimony can be used to establish the causal link between Cason's injury and the resulting tuberculosis in his spine. The carrier goes on to argue that such a medical conclusion can only be offered by one licensed to practice medicine. Because Dr. Kozub is a clinical microbiologist and not licensed to practice medicine, the carrier maintains that he is not competent to offer an expert medical opinion on causation. The carrier does not contend that if Kozub was a medical doctor he would still be unqualified as an expert in this case.

The carrier relies primarily on this Court's decision in *Bilbrey v. Industrial Comm'n*, 27 Ariz.App. 473, 556 P.2d 27 (1976). In *Bilbrey*, we held that a licensed clinical psychologist could not present expert testimony on whether the injured worker continued to suffer emotional consequences from his injury and whether there was a causal relationship between his

physical injury and his emotional condition. We found that such an opinion must be considered "medical diagnosis" and that under Arizona law, a licensed psychologist was not authorized to engage in the practice of medicine including the making of a medical diagnosis.

The court in *Bilbrey* was influenced by language in prior Arizona Supreme Court decisions which stated the general rule that if the result of an industrial accident is not one that is clearly apparent to the layman, the physical condition of the injured employee and the causal connection between the accident and the condition can only be determined by expert medical testimony. *E.g., Wheeler v. Industrial Comm'n*, 94 Ariz. 199, 382 P.2d 675 (1963). The dissent in *Bilbrey*, however, correctly pointed out that the "statements in prior Arizona decisions must be considered in the factual context given, that is, in a factual context where the only testimony presented was that of laymen witnesses and of medical doctors." 27 Ariz.App. at 476, 556 P.2d at 30. (Haire, J., dissenting). Although *Bilbrey* is no longer controlling because the legislature subsequently changed the licensing statutes for psychologists, *Hooper v. Industrial Comm'n*, 126 Ariz. 586, 617 P.2d 538 (App.1980), the carrier asks us to extend the logic of *Bilbrey* to the facts of this case. We agree with the dissent in *Bilbrey* and conclude that the underlying rationale of that case must now be expressly rejected.

The logic of *Bilbrey* was implicitly rejected in the context of a medical malpractice action in *Rodriguez v. Jackson*, 118 Ariz. 13, 574 P.2d 481 (App.1977). In *Rodriguez*, the plaintiff offered affidavits of a PhD in biology, a registered nurse and a PhD in pharmacology, to oppose a motion for summary judgment. The plaintiff did not produce any evidence from medical doctors that the defendant physicians were negligent. Although the court concluded that plaintiff's experts were not competent to testify that the defendant doctors failed to abide by the appropriate standard of care and were negligent, the court distinguished

between testimony on causation and testimony on the standard of care required of the physician. The court stated that "[o]ne need not necessarily be a medical doctor in order to testify as to causation." *Id.* at 17, 574 P.2d at 485. Thus, the court concluded that the pharmacologist was competent to testify to the effect of a particular drug on the plaintiff's nerve, but was not competent to give an opinion on whether the doctors were negligent.

 Implicit in the court's decision is the recognition "that it is the actual qualifications of the witness that count rather than his title." 3 J. Weinstein and M. Berger, *Weinstein's Evidence* 702–25 (1982) (*Weinstein*). Indeed, this is precisely what is contemplated by Rule 702, Arizona Rules of Evidence [2] which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, *a witness qualified as an expert by knowledge, skill, experience, training, or education,* may testify thereto in the form of an opinion or otherwise.

(Emphasis added). The rule speaks to the "knowledge, skill, experience, training or education" of the witness not his title or pedigree. Once the court or the ALJ determines that the subject on which the expert wishes to testify is not within the common knowledge of the average juror or layman, it must then determine whether the proposed witness is qualified to provide that information. The inquiry must be "whether the *expertise* of the witness is applicable to the subject about which he offers to testify." *Englehart v. Jeep Corp.*, 122 Ariz. 256, 258, 594 P.2d 510, 512 (1979) (emphasis added). *Cf. Roach v. Industrial Comm'n*, 137 Ariz. 510, 672 P.2d 175 (Ariz. 1983) (physician with knowledge of job requirements may testify regarding worker's ability to function at a specific job).

The need to place this inquiry upon the expert's actual qualifications rather than any "magical or talismanic" use of the word "medical," *Bilbrey v. Industrial Comm'n*, 27 Ariz.App. at 476, 556 P.2d at 30 (Haire, J., dissenting), was explained in a leading decision which predated adoption of the Federal Rules of Evidence. In *Jenkins v. United States*, 307 F.2d 637 (D.C. Cir.1962), a criminal prosecution in which the defendant's sole defense was insanity, the trial judge excluded the testimony of three defense psychologists because they lacked medical training. The court of appeals reversed and after discussing a number of cases in which general medical practitioners had been allowed to testify about matters within a medical specialty, concluded that "if experience or training enables a proffered expert witness to form an opinion which would aid the jury, in the absence of some countervailing consideration, his testimony will be received." *Id.* at 644.

> The determination of a psychologist's competence to render an expert opinion based on his findings ... must depend upon the nature and extent of his knowledge. It does not depend upon his claim to the title 'psychologist.'
>
> . . . .
>
> ... We hold only that the lack of a medical degree, and the lesser degree of responsibility for patient care ... are not automatic disqualifications. Where relevant, these matters may be shown to affect the weight of ... testimony, even though it may be admitted in evidence. The critical factor in respect to admissibility is the actual experience of the witness and the probable probative value of his opinion.

*Id.* at 645–46. *See, e.g., Cunningham v. Gans*, 507 F.2d 496 (2d Cir.1974) (pipefitter with thirty-three years experience could testify as expert although he was not a metallurgist); *Redmond v. Baxley*, 475 F.Supp. 1111 (E.D.Mich.1979) (medical be-

---

2. We recognize that the Commission is "not bound" by "statutory rules of evidence." A.R.S. § 23–941.F. (Supp.1983). The Commission is granted greater flexibility than the rules of evi-

dence allow in order to "achieve substantial justice." Our holding is consistent with this purpose.

havioral scientist who was not a medical doctor was qualified to testify about the medical ramifications of rape trauma).

Despite the apparent ironclad statements in *Bilbrey*, Arizona courts routinely look beyond titles and inquire into a witness' actual "knowledge, skill, experience, training, or education." In *State v. Graham*, 135 Ariz. 209, 660 P.2d 460 (1983), the supreme court found that the trial judge did not abuse his discretion in allowing a police detective to testify that he had observed rigor mortis in the victim's body and to testify to his conclusions about how the victim died and how long he had been dead. The defendant objected to the detective's testimony on the grounds that he was not qualified to offer his opinion in these areas because he did not have medical or forensic training. Because the detective had been a law enforcement officer for four years, had specialized training in homicide investigation which included the observation of autopsies, and had investigated approximately sixty shooting incidents including twenty deaths, the detective was found to have the necessary qualifications to offer expert medical testimony. *Id.* at 211–12, 660 P.2d at 462–63.

In *Gaston v. Hunter*, 121 Ariz. 33, 588 P.2d 326 (App.1978), the court discussed, among other things, whether neurosurgeons could testify to the standard of care applicable to the defendant orthopedic surgeons. The trial court prevented the neurosurgeons from testifying. Although the court held that it was not error under the evidence developed in the trial, the court discussed certain guidelines that are supportive of Cason's position in this case. The court stated that it is "not strictly necessary that the witness be of the same specialty as the defendant. 'It is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of admissibility.'" *Id.* at 53, 588 P.2d at 346 (citing *Fitzmaurice v. Flynn*, 167 Conn. 609, 618, 356 A.2d 887, 892 (1975)).

Finally, in *Chalupa v. Industrial Comm'n*, 109 Ariz. 340, 509 P.2d 610 (1973), the Arizona Supreme Court held that a chiropractor was competent to testify to the "causation of any abnormalities of the spine." *Id.* at 342, 509 P.2d at 612. The court stated that a chiropractor is limited as an expert witness to his field of endeavor only. But, despite the fact that the Arizona statute applicable at the time to the licensing of chiropractors prohibited them from practicing medicine, the court nevertheless authorized chiropractors to testify on the "medical" subject of the causation of abnormalities of the spine.

The short answer to the question presented in this special action is this: "[j]ust as the wrong title may mean that the witness is nevertheless qualified, the right title will not suffice if the witness does not have the qualifications required by the facts of the case." 3 *Weinstein, supra*, at 702–26. Dr. Kozub is not a medical doctor. Thus, he has the wrong title. On the other hand, he has a post-graduate degree in microbiology and immunology. He has worked in the area of microbiology since approximately 1960. He is board certified and a diplomat in the American Association for Medical Microbiology. His certification includes bacteriology, mycology, mycobacteriology, serology and immunology. He has published eighteen articles. Thus, the ALJ correctly concluded he has the qualifications required by the facts of this case.[3] We therefore hold that in compensation hearings, expert witness testimony on the question of whether an impairment has been caused by an industrial injury may be given by one who is not a medical doctor so long as the witness has

---

**3.** As a secondary argument, the carrier contends that the ALJ abused his discretion in accepting Kozub's testimony in preference to the other medical doctors. But by virtue of our holding, the weight to be given to Kozub's testimony and to the testimony of the other physicians was solely within the discretion of the ALJ. Further, the physicians did not rule out Kozub's explanation for the cause of the spinal tuberculosis. They stated it was "possible." Thus, we do not find any abuse of discretion in the ALJ's decision to accept Kozub's opinion in resolving the conflict in the testimony.

the qualifications required by the standard of Rule 702, Arizona Rules of Evidence, and by the facts of the particular case.

The award is affirmed.

BROOKS and CORCORAN, JJ., concur.