STATE of Utah, Plaintiff and Appellee,

v.

Richard M. ELDREDGE, Defendant
and Appellant.

No. 20558.

Supreme Court of Utah.

Feb. 1, 1989.
Rehearing Denied March 30, 1989.

Stewart M. Hanson, Jr., Michael W. Homer, Charles P. Sampson, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

ZIMMERMAN, Justice:

Defendant Richard M. Eldredge appeals from his jury conviction of four counts of sodomy on a child, in violation of section 76–5–403 of the Code. He makes several claims of error relating to, *inter alia,* the following: admission of the child victim's testimony and hearsay statements, exclusion of polygraph evidence and evidence of a witness's bias, sufficiency of the evidence, and failure to grant a motion for a new trial or an arrest of judgment based on exculpatory evidence discovered after trial. We affirm.

When Eldredge's son was two years old, Eldredge and the boy's mother, Suzanne Sanchez, separated and then divorced. Sanchez was awarded custody of their son, and Eldredge was granted visitation rights. At a hearing held a year and a half later, Sanchez unsuccessfully sought modification of the divorce decree to reduce the frequency of Eldredge's visits. Within a few months of the hearing, Sanchez reported to the sheriff's office that she suspected Eldredge of sexually abusing their son.

Shortly after that report was made, Thomas Harrison, a social worker and director of the Child Sexual Abuse Program in the Department of Psychiatry at Primary Children's Medical Center, interviewed the boy and concluded that he was probably the victim of sexual abuse. Harrison immediately reported this conclusion to the sheriff's office and began treating the child, which he continued to do for approximately one year.

Eldredge was charged and tried on four counts of sodomy on a child, a first degree felony. *See* Utah Code Ann. § 76–5–403 (Supp.1979). At trial, several witnesses, including the victim, the victim's mother, and Harrison, testified for the prosecution. The boy, then five years old, used anatomically correct dolls to demonstrate his testimony of oral sexual abuse. Although his testimony was somewhat confused and contradictory, the boy did state that he was telling the truth when he testified that Eldredge had committed the oral sodomy.

Sanchez testified that her son had exhibited bizarre behavior and symptoms of illness shortly after returning from various visits with Eldredge. Specifically, she said that on one occasion, the child told her to look at and taste his penis because it tasted good. And on several occasions after vis-

its, the boy demonstrated disassociative behavior such as lapsing into unresponsive states during which he removed all of his clothing and pretended to be a dog, appeared to be stunned, or sobbed uncontrollably. Immediately after visits, the child was often pale and vomited or had diarrhea, according to Sanchez's testimony.

Harrison testified that when he and the child discussed sexual abuse, the boy exhibited the same types of disassociative behavior and symptoms described by Sanchez. The child lapsed into various imaginary animal characterizations and expressly refused to be himself. He suffered from enuresis and encopresis (uncontrolled urination and defecation) and attributed his behavior to the imaginary animals. Harrison then discussed professional literature on child sexual abuse, compared the boy's behaviors and symptoms to those described in the literature, and concluded that they were consistent with the child's having been the victim of sexual abuse.

Harrison also testified that during their therapy sessions, the boy had described and demonstrated the physical acts of abuse by using anatomically correct dolls and had attributed the abuse to Eldredge. Harrison repeated various other out-of-court statements made to him by the boy, such as the child's description of Eldredge's erection and ejaculation. He testified that such a young child's ability to describe and demonstrate sexual acts strongly indicated personal exposure to and

involvement in those acts and that in his opinion, the boy was the victim of sexual abuse. Finally, he testified that it was his opinion that the child's statements made during therapy were truthful, including his statements attributing the sexual abuse to Eldredge.

Several witnesses testified for the defense. Eldredge took the stand and denied the abuse. The jury found him guilty, in October 1984, on all four counts. The trial court sentenced him to four concurrent terms of imprisonment, each for five years to life, under the first degree felony sentencing provisions of the Code. *See* Utah Code Ann. §§ 76–3–203(1) (1978). Eldredge appeals. We will consider his claims of error *seriatim.*

Eldredge first asserts that the trial court's retroactive application of sections 76–5–410 and –411 of the Code ran afoul of the federal ban on ex post facto laws because it operated to narrow the scope of his federal constitutional right to confront the witnesses against him.[1] *See* U.S. Const. art. I, § 10, amends. VI, XIV. Section 76–5–410 provides that a child victim of sexual abuse shall be considered competent to testify at trial without prior qualification.[2] Utah Code Ann. § 76–5–410 (Supp.1983). Section 76–5–411 makes such a child's out-of-court statements regarding the abuse admissible if certain requirements are met, even if the evidence would otherwise be inadmissible hearsay.[3] Utah Code Ann.

1. Eldredge contends that article I, section 18 of the Utah Constitution affords precisely the same protection as does the federal ex post facto provision. Because Eldredge has done nothing more to brief this issue than cite one inapposite case, we choose not to address the state provision. Our analysis is limited to the federal provision. *See State v. Lafferty,* 749 P.2d 1239, 1247 n. 5 (Utah 1988); *State v. Earl,* 716 P.2d 803, 805–06 (Utah 1986).

2. At the time of Eldredge's trial, section 76–5–410 read as follows:
   Notwithstanding any other provision of law or rule of evidence, a child victim of sexual abuse, under the age of ten, shall be considered a competent witness and shall be allowed to testify without prior qualification in any judicial proceeding. The trier of fact shall be permitted to determine the weight and credibility to be given to the testimony.

Utah Code Ann. § 76–5–410 (Supp.1983). This language was altered somewhat in 1985, but its substance does not appear to have been changed. *See* Utah Code Ann. § 76–5–410 & compiler's notes (Supp.1988).

3. At the time of Eldredge's trial, section 76–5–411 read as follows:
   (1) Notwithstanding any other provision of law or rule of evidence, a child victim's out of court statement regarding sexual abuse of the child is admissible into evidence though it does not qualify under an existing hearsay exception, so long as: (1) the child testifies; or (2) in the event the child does not testify, there is other corroborative evidence of the abuse. Before admitting such a statement into evidence, the judge shall determine whether the general purposes of the evidence are such that the interest of justice will best

§ 76–5–411 (Supp.1983). Pursuant to these statutes, the child, who was five years old at the time of trial, testified and some of his out-of-court statements were admitted. Eldredge terms the trial court's reliance on sections 76–5–410 and –411 "ex post facto" because those statutes became effective after the crimes were committed but before the trial.

The first step in resolving this claim is to determine the scope of the federal constitutional prohibition against ex post facto laws. The United States Supreme Court has defined as ex post facto any law that operates to make criminal an act that was innocent when done, to increase the punishment for a crime after its commission, or to allow conviction on less proof in amount or degree than was required when the offense was committed.[4] *See Dobbert v. Florida,* 432 U.S. 282, 292–94, 97 S.Ct. 2290, 2297–99, 53 L.Ed.2d 344 *reh'g denied,* 434 U.S. 882, 98 S.Ct. 246, 54 L.Ed.2d 166 (1977); *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925); *Thompson v. Missouri,* 171 U.S. 380, 383–85, 387, 18 S.Ct. 922, 923–24, 924–25, 43 L.Ed. 204 (1898); *Hopt v. Utah,* 110 U.S. 574, 589–90, 4 S.Ct. 202, 209–10, 28 L.Ed. 262 (1884). Under this definition, "[s]tatutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not *ex post facto* in their application to prosecutions for crimes committed prior to their passage." *Hopt,* 110 U.S. at 589, 4 S.Ct. at 210; *accord Underwood v. State,* 111 Tex.Crim. 124, 125, 12 S.W.2d 206, 206 (1927); *State v. Clevenger,* 69 Wash.2d 136, 140–42, 417 P.2d 626, 629–30 (1966); *State v. Slider,* 38 Wash.App.

689, 693–95, 688 P.2d 538, 541–42 (1984) (statute similar to section 76–5–411). Similarly, the retroactive application of statutes that make previously inadmissible evidence admissible is not ex post facto. *Thompson,* 171 U.S. at 385, 387, 18 S.Ct. at 924, 924–25, *reaffirmed in Beazell,* 269 U.S. at 170–71, 46 S.Ct. at 68–69.

We must examine sections 76–5–410 and –411 in light of these rules to determine whether their application was ex post facto. Section 76–5–410 allows children to testify who might otherwise have been disqualified under prior law. *See State v. Fulton,* 742 P.2d 1208, 1217 (Utah 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 777, 98 L.Ed.2d 864 (1988). On its face, section 76–5–410 can be characterized as merely enlarging the class of persons competent to testify. And section 76–5–411 appears to do no more than allow the admission of otherwise inadmissible hearsay statements. Therefore, sections 76–5–410 and –411 do not appear to fall within the Supreme Court's definition of ex post facto laws.

Eldredge, however, argues that the Supreme Court has stated that the ex post facto provision prohibits retroactive application of laws that operate to deny a substantial right in existence when the crime was committed. *See Weaver v. Graham,* 450 U.S. 24, 29 n. 12, 101 S.Ct. 960, 964 n. 12, 67 L.Ed.2d 17 (1981); *Thompson v. Utah,* 170 U.S. 343, 354–55, 18 S.Ct. 620, 624, 42 L.Ed. 1061 (1898); *Kring v. Missouri,* 107 U.S. 221, 232, 235–36, 2 S.Ct. 443, 452, 454–55, 27 L.Ed. 506 (1883). He contends that the application of sections 76–5–410 and –411 to his case was prohibited by the ex post facto provision because it

be served by admission of the statement into evidence. In addition, the court shall consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, the reliability of the assertion, and the reliability of the child witness, in deciding whether to admit such a statement.

(2) A statement may be admitted under this exception only if the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with an opportunity to prepare to meet it, his intention in offering the statement, and the particulars of it.

(3) For purposes of this section, a child is a person under the age of ten.

Utah Code Ann. § 76–5–411 (Supp.1983). This language was modified in 1985 and again in 1988, but any changes pertinent to this case do not appear to have been of substance. *See State v. Nelson,* 725 P.2d 1353, 1355 nn. 2 & 3 (Utah 1986); Utah Code Ann. § 76–5–411 & compiler's notes (Supp.1988).

4. The federal constitution's ex post facto provision applies only to penal laws. *See, e.g., Kring v. Missouri,* 107 U.S. 221, 225, 227, 2 S.Ct. 443, 446–47, 448, 27 L.Ed. 506 (1883).

actually operated to deny his federal constitutional right to confrontation as it existed at the time the crimes were committed.

First, Eldredge contends that allowing his son to testify pursuant to section 76–5–410 effectively denied him his right to confrontation because when the boy took the stand, as the statute permitted, his testimony was so equivocal and confused as to make meaningful cross-examination impossible. We disagree. A review of the record demonstrates that Eldredge's cross-examination was very effective, so effective that the child recanted and denied the abuse. Therefore, we conclude that section 76–5–410 did not operate to deny Eldredge's federal confrontation right. *See State v. Marcum,* 750 P.2d 599, 602–03 (Utah 1988).

Second, Eldredge argues that admission of his son's out-of-court statements pursuant to section 76–5–411 violated his right to confrontation because he could not effectively cross-examine the boy. This Court has held on several occasions that the admission of such hearsay does not abridge a defendant's right to confrontation if the child victim is present and available to testify and be cross-examined. *Marcum,* 750 P.2d at 603; *State v. Loughton,* 747 P.2d 426, 429 (Utah 1987); *State v. Fulton,* 742 P.2d at 1218–19; *State v. Nelson,* 725 P.2d 1353, 1356 (Utah 1986). Moreover, here the child actually testified and was cross-examined quite effectively. Finally, this argument, like Eldredge's argument with respect to section 76–5–410, has previously been rejected on similar facts. *See Marcum,* 750 P.2d at 602–03; *Loughton,* 747 P.2d at 429–30; *Fulton,* 742 P.2d at 1210–11, 1218–19 & n. 16; *Nelson,* 725 P.2d at 1356–57.

Because the Supreme Court's definition of ex post facto laws does not encompass sections 76–5–410 and –411 and because we do not find a denial of Eldredge's right to confrontation, we reject his claim that their application to his case offended the ex post facto ban.[5]

■ Eldredge next claims that even if sections 76–5–410 and –411 can be applied to his case, the trial court misinterpreted their requirements and, as a result, misapplied both sections. We first address Eldredge's section 76–5–410 challenge, which is based on Utah Rule of Evidence 602.

Rule 602 states that a witness may testify only to those matters of which he or she has personal knowledge.[6] Eldredge contends that under this rule, testimony of a witness must be excluded if the witness's memory of the subject matter of the testimony is less than complete. He argues that his son's testimony indicated that the boy had virtually no memory of the events charged. Therefore, Eldredge concludes, the child's testimony should have been excluded.

Rule 602 is not amenable to such a broad construction. It merely requires that the witness have the opportunity and the capacity to perceive the events in question. *See State v. Calamity,* 735 P.2d 39, 42 (Utah 1987); Utah R.Evid. 602; Fed.R. Evid. 602 advisory committee's note; J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 602[02] (1987). Here there is no contention that the boy lacked personal knowledge of the incidents of abuse; the only question is how well he could remember the details.

We have previously explained, in a case dealing with the competency of a child sexual abuse victim, that lapses in memory are appropriately dealt with under Utah Rule

---

**5.** This conclusion is not undermined by defense counsel's citation to dicta in *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798), which indicated that retroactive application of any change in the rules of evidence would be ex post facto. That dicta has long since been rejected in cases which defense counsel failed to cite. *See Beazell v. Ohio,* 269 U.S. 167, 170–71, 46 S.Ct. 68, 69–70, 70 L.Ed. 216 (1925); *Thompson v. Missouri,* 171 U.S. 380, 382, 18 S.Ct. 922, 922–23, 43

L.Ed. 204 (1898); *Hopt v. Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884).

**6.** Rule 602 provides in part: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself." Utah R.Evid. 602.

of Evidence 403, which provides for the exclusion of testimony so unreliable that its potential for unfair prejudice substantially outweighs its probative value. *See State v. Fulton*, 742 P.2d at 1218 & n. 15; Utah R.Evid. 403; J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 601[04] (1987). Because Eldredge did not object to the child's testimony on rule 403 grounds either below or on appeal, we decline to address the question of whether his testimony should have been excluded under that rule.

Next, we address Eldredge's claim that the trial court, in admitting the boy's out-of-court statements, misinterpreted and misapplied section 76–5–411. As it read at the time of Eldredge's trial, that section required the trial court to determine whether the child victim's out-of-court statements satisfied one of two alternative tests contained in subparts (1) and (2) of subsection 76–5–411(1), as well as the test contained in the last two sentences of that subsection. *State v. Nelson*, 725 P.2d at 1355 n. 3. Subparts (1) and (2) required either that the child testify or that other corroborative evidence of the abuse exist. The last two sentences of subsection 76–5–411(1) required the trial judge to determine whether the interests of justice would be served by admission of the statement and to consider the child's age and maturity, the nature and duration of the alleged abuse, the child's relationship to the accused, the statement's reliability, and the child's reliability. Utah Code Ann. § 76–5–411 (Supp. 1983) (quoted in footnote 3, *supra*).

As we observed in *Nelson*, the trial court must consider not only the factors listed in subsection 76–5–411(1), but also any other factors pertinent to a careful evaluation of the reliability of the out-of-court statements.

> Subsection 76–5–411(1) ... addresses the trustworthiness [of a child victim's hearsay statements] by listing a number of factors the trial judge must consider before admitting such evidence. These factors are intended to prompt a comprehensive inquiry into all the circumstances surrounding the child's out-of-court statement in order to determine its reliability. It is noteworthy that subsection

76–5–411(1) requires a determination of reliability without regard to ... the hearsay [declarant's availability]. The importance of such an inquiry cannot be overemphasized.

In any case involving a proffer of hearsay statements by a child victim, the trial court must make an in-depth evaluation of the proposed testimony as required by subsection 76–5–411(1). This inquiry may require consideration of some matters not specifically mentioned in the statute. For example, to determine the reliability of the statement, a court should consider how soon after the event it was given, whether the statement was spontaneous, the questions asked to elicit it, the number of times the statement was repeated or rehearsed, and whether the statement is reproduced verbatim in court, viz., tape recording, video tape, or otherwise.

725 P.2d at 1355 n. 3 (citing Unif.R.Evid. 807 (1986 amendment to 1974 Unif.R.Evid.) (promulgated by National Conference of Commissioners on Uniform State Laws)).

After considering all the relevant factors, the court must make written findings and conclusions with respect to each factor.

> The trial court should then enter findings and conclusions regarding each of the factors listed in the statute to explain its reasons for admitting or excluding the testimony. Only when these steps are taken can a defendant be assured that the statutorily required appraisal has been made. Further, only when such steps are taken can this Court properly perform its appellate review function.

*Nelson*, 725 P.2d at 1355 n. 3.

The trial court in this case did not make the required findings, and Eldredge now apparently contends that the child's statements should not have been admitted absent the findings. However, Eldredge neither requested that the *Nelson* findings be made nor objected to the admission of hearsay in their absence. Utah Rule of Evidence 103(a) requires "a clear and definite objection" at trial to preserve an evidentia-

ry error for appeal. *See State v. Malmrose,* 649 P.2d 56, 58 (Utah 1982) (decided under former Utah Rule of Evidence 4, a predecessor to rule 103).

■ In an attempt to meet that requirement, Eldredge points out that his counsel did object to admission of the victim's testimony in the absence of a specific determination that the victim was competent to testify. The findings required by section 76–5–411 relate to the reliability of a victim's out-of-court statements, which is by no means equivalent to the victim's competency to testify at trial. *State v. Fulton,* 742 P.2d at 1219 n. 16. An objection based on competency does not call the trial court's attention to the reliability issue. *See id.; cf. State v. McCardell,* 652 P.2d 942, 947 (Utah 1982) (foundation objection did not direct trial court's attention to potential prejudice). Therefore, we conclude that no proper objection was made on this issue. In the absence of an adequate objection, the error in applying section 76–5–411 cannot be considered on appeal. *Marcum,* 750 P.2d at 603.

Despite the failure to properly preserve the issue below, Eldredge argues that we should reach the merits of his claim because admitting the testimony without making the required findings was plain error. Utah Rule of Evidence 103(d) provides: "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."[7] The first requirement for a finding of plain error is that the error be "plain," i.e., from our examination of the record, we must be able to say that it should have been obvious to a trial court that it was committing error. *See State v. Poe,* 21 Utah 2d 113, 117–18, 441 P.2d 512, 514–15 (1968), *appeal after remand,* 24 Utah 2d 355, 471 P.2d 870 (1970); *State v. Cobo,* 90 Utah 89, 102, 60 P.2d 952, 958 (1936); *cf. State v. McCardell,* 652 P.2d at 947 (incorrect objection did not bring error to trial court's attention; not plain error under former rule 4). The second and somewhat interrelated requirement for a finding of plain error is that the error affect the substantial rights of the accused, i.e., that the error be harmful.[8] *See State v. Bullock,* 699 P.2d 753, 756 (Utah 1985); *State v. Lesley,* 672 P.2d 79, 81–82 (Utah 1983); *State v. Gardunio,* 652 P.2d 1342, 1344 (Utah 1982) (per curiam); *State v. Poe,* 21 Utah 2d at 117–18, 441 P.2d at 515; *State v. Cobo,* 90 Utah at 102, 60 P.2d at 958.[9]

We first address the question of the error's plainness. The rule that an error not called to the trial court's attention will be

**7.** This rule is substantially similar to former rule 4. *See State v. Poe,* 21 Utah 2d 113, 441 P.2d 512 (1968), *appeal after remand,* 24 Utah 2d 355, 471 P.2d 870 (1970); Utah R.Evid. 103(d) advisory committee's note.

**8.** We note that the two plain error requirements of obviousness and harmfulness are related and that the obviousness requirement poses no rigid and insurmountable barrier to review. For example, the more harmful an error is, the more likely an appellate court is to conclude that it was objectively obvious, because a high degree of harmfulness might be expected to attract a trial court's attention. On the other hand, in appropriate cases we can exercise our discretion to dispense with the requirement of obviousness so that justice can be done, as when an error not readily apparent to the court or counsel proves harmful in retrospect.

This observation should make academic Justice Stewart's concern that the plain error requirements articulated here might frustrate our review of harmful errors. If his arguments were taken literally, we could have no articu-

lated test for plain error and counsel would not know how to address the question on appeal. But no such abandonment of the attempt to state a legal standard is required. It is enough if we acknowledge, and the Bar and the public understand, that we are trying to spell out the considerations that will guide our discretion in determining whether to review a harmful error despite a procedural default. At bottom, the plain error rule's purpose is to permit us to avoid injustice. No statement of the factors that are important to our deliberations on the point should be read to limit our power to achieve that end.

**9.** For an explanation of rule 103's requirement of harmfulness, see *State v. Bishop,* 753 P.2d 439, 499 (Utah 1988) (Zimmerman, J., concurring); *State v. Hackford,* 737 P.2d 200, 204 n. 1 (Utah 1987); *State v. Knight,* 734 P.2d 913, 919–20 (Utah 1987); *State v. Rammel,* 721 P.2d 498, 500 (Utah 1986). These cases establish that the harmfulness standard set forth in rule 103 is substantively identical to that of Utah Rule of Criminal Procedure 30. *E.g., Bishop,* 753 P.2d at 499.

considered only if it can be shown to have been "plain" permits rule 103(d) and rule 103(a) to coexist. The principle underlying rule 103(a)'s requirement of "a timely objection ..., stating the specific ground of objection" is that in the interest of orderly procedure, the trial court ought to be given an opportunity to address a claimed error and, if appropriate, correct it. *See McCardell,* 652 P.2d at 947. Normally, compliance by counsel with the contemporaneous objection requirement of rule 103(a) is assured because of the severe sanction that follows non-compliance: a refusal by the appellate court to consider the issue. However, the premise of rule 103(d) is that the ends of justice must not be lost sight of in the pursuit of procedural regularity and that when an error is plain, a trial court can legitimately be said to have had a reasonable opportunity to address and correct it, even in the absence of an objection.

■ In light of the purposes of the plainness requirement, can it fairly be said that the erroneousness of admitting the hearsay evidence without having first made the required findings should have been obvious to the trial court? The language of section 76–5–411 does not expressly require written findings regarding reliability, and the trial court did not have the benefit of an appellate decision interpreting the statute's requirement—*Nelson* had not yet been decided. *See United States v. Petrozziello,* 548 F.2d 20, 23 (1st Cir.1977). We cannot

conclude that the need for written findings should have been obvious. However, there is another closely related ground for exclusion that may form a basis for Eldredge's claim of error. Utah Rule of Evidence 403 requires the exclusion of evidence if its potential for unfair prejudice substantially outweighs its probativeness. Under that rule, the question is whether the hearsay evidence was sufficiently unreliable that it should have been obvious to the trial judge that the testimony's probativeness was substantially outweighed by its potential for unfair prejudice. On this record, we cannot say "yes." [10]

Being unable to find that either the need for findings or the fact that the evidence's probativeness was outweighed by its potential for unfair prejudice should have been apparent to the trial court, we need not reach the second prong of the plain error rule—whether the admission of hearsay had a substantial impact on the verdict.[11] And, because we do not find plain error, we do not reach the merits of Eldredge's claim.[12]

■ Eldredge next claims that the victim's therapist, Thomas Harrison, should not have been qualified as an expert in the diagnosis and treatment of child sexual abuse because he is a social worker rather than a psychiatrist or psychologist. Under Utah Rule of Evidence 702, trial courts have discretion in determining the qualifi-

**10.** Other circumstances, however, might require a finding of plain error. For example, in a case in which a child declarant had, when first confronted with allegations of abuse, repeatedly denied that the abuse had taken place but admitted it under repetitious and coercive questioning, the potential unreliability of such hearsay and its consequent likelihood of causing unfair prejudice should be apparent to a trial court. Similarly, if a therapist testified to a child's hearsay statements regarding instances of abuse that were made during therapy sessions of which no records were kept, the unreliability of such testimony might also be plain.

**11.** As we noted previously, the requirements of obviousness and harmfulness are related and an error may be so harmful that we should exercise our discretion to correct it regardless of the lack of either an objection or objective obviousness. However, this is not a case in which we can say that the error's harmfulness was so

great that either it alone should have caught the trial court's attention or we should exercise our discretion to dispense with the requirement of obviousness in the interests of justice.

**12.** Although the trial court's failure to make the written findings required by section 76–5–411 was not plain error in this case, such a failure may well be in another. For that reason, prosecutors would be wise to assure that a defendant's failure to request such findings does not result in a reversal. The obvious way for a prosecutor to prevent such a result is to make the request for findings him—or herself. The most suitable vehicle for exploring the issues raised by section 76–5–411 would be a hearing *in limine.* At such a hearing, whether requested by the State or the accused, the State would have the burden of establishing the reliability that the requirement of findings was designed to assure.

cations of expert witnesses. *See, e.g. State v. Espinoza,* 723 P.2d 420, 421 (Utah 1986); G. Joseph, S. Saltzburgh & The Trial Evidence Committee of the American Bar Association Section of Litigation, *Evidence in America: The Federal Rules in the States* § 51.3, at 2 (1987). And attaining a particular academic degree may be irrelevant to the substance of the necessary training and experience. *E.g., Jenkins v. United States,* 307 F.2d 637, 644 (D.C.Cir.1962) (en banc); *Madison Granite Co. v. Industrial Comm'n,* 138 Ariz. 573, 575–77, 676 P.2d 1, 3–5 (Ariz.App.1983); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[04], at 702-25, 702–51 (1987). Our review of the record convinces us that Harrison has extensive qualifications in this area of expertise and that the trial court did not abuse its discretion by allowing him to testify.[13]

■ Eldredge next claims that the trial court should have admitted the results of polygraph examinations that he took which would have bolstered his claim of innocence. A stipulation between the State and the accused is presently required for the admission of polygraph test results. *State v. Fulton,* 742 P.2d at 1212; *State v. Abel,* 600 P.2d 994, 998–99 (Utah 1979). The reason for this rule is that polygraph data has not been shown to be sufficiently reliable to justify the tendency of a fact finder to be overawed by the test results and too willing to abdicate its difficult truth-finding function to an expert and his or her machine. *See Fulton,* 742 P.2d at 1212; *Abel,* 600 P.2d at 996–97; Utah R.Evid. 403, 702. The rationale for admitting polygraph results with a stipulation is not that the stipulation makes them any more reliable or any less likely to dominate the fact-finding process, but that it serves as a waiver. *Id.* at 997. There was no waiver in this case because the State refused to stipulate to admission of the polygraph results. Therefore, under *Fulton* and *Abel,* the results were inadmissible.

■ Eldredge nevertheless argues that the polygraph results should have been admitted as a *quid pro quo* to balance the testimony of Thomas Harrison, who, in essence, functioned as a human lie detector when he testified as to the credibility of the victim's out-of-court statements. Harrison's opinion that the child's statements were truthful was not a proper subject for testimony. However, the appropriate way for Eldredge to address the problem of Harrison's testimony would have been to raise an objection and seek to exclude it, not to attempt to counter the testimony with his own inadmissible polygraph evidence. We must reject his argument for the admission of the polygraph evidence.

■ Eldredge next argues that the trial court erred when it limited the evidence demonstrating the bias of the victim's mother, Suzanne Sanchez. Eldredge contends that he was not permitted to cross-examine Sanchez adequately or to present direct evidence that she was motivated to testify against him by a bitter visitation dispute. In *State v. Hackford,* 737 P.2d 200, 203 (Utah 1987), we held that evidence of prior conduct showing a witness's bias or motive to testify falsely is admissible under Utah Rule of Evidence 608(c), subject to possible exclusion under Utah Rule of Evidence 403 if its potential for unfair prejudice outweighs its probativeness. We also noted that under some circumstances, the improper exclusion of such evidence may violate not only rule 608(c), but also the right to confrontation guaranteed by the federal constitution. *Id.* at 204; *see Delaware v. Van Arsdall,* 475 U.S. 673, 674, 677–79, 106 S.Ct. 1431, 1433, 1434–35, 89 L.Ed.2d 674 (1986); U.S. Const. amends. VI, XIV.

A review of the record in this case reveals neither an abuse of discretion in applying the evidentiary rules nor a violation of the constitutional right to confrontation. Defense counsel was allowed to introduce evidence of the visitation dispute, including evidence of Sanchez's failure to make any allegations of sexual abuse until after she had been ordered to allow Eldredge his visitation rights. In closing argument, defense counsel stressed heavily Sanchez's

---

**13.** The propriety of qualifying Harrison as an expert is unrelated to one of the issues we address next, the propriety of the substance of his testimony.

purported bias against Eldredge and her motive to testify falsely, which resulted from the visitation battle. Under these circumstances, the trial court did not abuse its discretion or violate Eldredge's right to confrontation by refusing to allow cumulative evidence on this issue. *See* Utah R.Evid. 403.

■ Moreover, even if it could be said that the trial court had erred, any error was waived. When the issue of the visitation dispute came up and the State objected to defense counsel's continuing the line of questioning, the court stated that it was unwilling to allow counsel to elicit very much testimony on the visitation dispute, but that it would rule on the evidence's admissibility on a question-by-question basis. The trial court then admonished counsel to make a record by asking the questions. After all this, defense counsel simply desisted in this line of questioning, thus effectively waiving this claim. *See* Utah R.Evid. 103(a).

■ Eldredge next asserts that the evidence at trial was insufficient to support the jury's verdict. In evaluating such a claim, we must view the record evidence in the light most favorable to the verdict. *State v. Speer*, 718 P.2d 383, 384–85 (Utah 1986) (citing *State v. Petree*, 659 P.2d 443, 444 (Utah 1983)); *State v. Lamm*, 606 P.2d 229, 231 (Utah 1980); *State v. Booker*, 709 P.2d 342, 345 (Utah 1985). Having reviewed the evidence in that light, we cannot say that as a matter of law, the evidence was insufficient to sustain the verdict.

Eldredge next asserts that even if not one of the errors he complains of requires reversal, their cumulative effect denied him a fair trial. The concept of reversible cumulative error does not apply to this case because we have been unable to find any error. *See State v. Bishop*, 753 P.2d 439, 489 (Utah 1988); *State v. Rammel*, 721 P.2d 498, 501–02 (Utah 1986). We have rejected the claims of error reached on the merits, and we have found that the remaining claims were waived.

Finally, Eldredge claims that the trial court erred in refusing to order a new trial or to arrest the judgment. He asserts that the court should have granted him such relief because Thomas Harrison, who played an important role in the State's case, stated after the conclusion of the trial that he was unsure of Eldredge's guilt. At trial, Harrison was not asked and did not express an opinion as to Eldredge's guilt. The bulk of his testimony related to his conclusion that the child had been abused by someone, although not necessarily by Eldredge. He did testify that the victim attributed the abuse to Eldredge and that he had no reason to doubt the child's truthfulness. The gist of Eldredge's argument is that the State knew of Harrison's doubts about Eldredge's guilt and should have informed Eldredge so that he could have brought out Harrison's uncertainty at trial to create a reasonable doubt. Therefore, the meritoriousness of Eldredge's claim depends on the admissibility of Harrison's opinion regarding Eldredge's guilt.

■ The standards for arresting a judgment or granting a new trial are set out in Utah Rules of Criminal Procedure 23 and 24(a). Rule 23 requires a trial court to arrest judgment on the motion of the accused if the facts proved at trial do not constitute a crime, if the accused is mentally ill, or for "other good cause." Utah R.Crim.P. 23. Rule 24(a) allows a trial court to grant a new trial on the motion of the accused if any error or impropriety in the trial had a "substantial adverse impact" on the rights of the accused. Utah R.Crim.P. 24(a). The question, then, is whether the facts recited above constitute either good cause for the arrest of the judgment or an error or impropriety that had a substantial adverse effect on Eldredge's rights.

Utah Rule of Evidence 702 governs the admissibility of expert opinion testimony. *See* Utah R.Evid. 702. In *Kofford v. Flora*, 744 P.2d 1343, 1347 (Utah 1987), this Court held that a foundational showing establishing the reliability of such evidence is required for its admission under rule 702. At a hearing on Eldredge's post-trial motions, it was shown that Harrison's doubts were based solely on Eldredge's failure to confess. This is not a foundation adequate

to establish the reliability of any opinion as to Eldredge's guilt that Harrison might give at a new trial. Moreover, there is no reason to believe that any opinion of Harrison's as to Eldredge's guilt or innocence would be admissible, even if the foundation were stronger. *See, e.g., State v. Rammel.* Thus Harrison's opinion regarding Eldredge's guilt was inadmissible under rule 702, and the trial court could properly have denied Eldredge's motion for a new trial or an arrest of judgment on that ground.

We have considered Eldredge's other claims and find them to be without merit. The convictions are affirmed.

HALL, C.J., and DURHAM, J., concur.

HOWE, Associate Chief Justice (dissenting):

I dissent on the ground that the trial court committed reversible error in failing to make the determination required by Utah Code Ann. § 76–5–411(2) (Supp.1988) that "the interest of justice will best be served by admission" of out-of-court statements made by the child victim regarding sexual abuse.

Six days prior to trial, the prosecutor served on defendant's counsel written notice of the State's intent to use hearsay testimony at the trial. That notice specifically stated that it was given pursuant to section 76–5–411 and advised defendant's counsel that the child's mother, his grandmother, and Thomas Harrison would testify concerning statements made to them by the child regarding sexual abuse. In response, defendant's counsel the following day filed his written "Motion to Limit Testimony." In that motion, he moved the trial court for a pretrial order limiting the use of hearsay testimony to which the State had given him notice. The first three grounds for the motion were:

1. The proposed hearsay is inconsistent with the child's testimony at the preliminary hearing.
2. There is not corroborative evidence of the child's statements and the alleged hearsay statements contradict the child's testimony.

3. Because of the age of the child at the time of the alleged offense the alleged statements are *unreliable.*

(Emphasis added.) Three other grounds were also stated: that the use of the hearsay statements would deny defendant his right of confrontation under the United States and Utah Constitutions; that section 76–5–410, which makes the child a competent witness, violates those constitutions since the child is an incompetent witness; and that sections –409 and –410 should not be relied upon in this action since the alleged offenses took place before their enactment and the admission of the child's testimony would be ex post facto and violate the United States and Utah Constitutions.

The first three grounds of the motion quoted above were clearly based on the provision in section 76–5–411(2) which provides that in determining whether to admit the out-of-court statements of the child,

The judge shall consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, and the *reliability* of the assertion and of the child.

(Emphasis added.)

The motion was heard the morning of the first day of trial. Much of the argument made by defense counsel and by the prosecutor centered around whether the changes effected by sections 76–5–410 and –411 were ex post facto. Defense counsel also sought to have the court examine the child victim in chambers to determine his competency to be a witness and to restrict the use of leading questions to him. While these arguments did not focus on the requirements of section 76–5–411(2) set forth above, other argument did specifically focus on the admissibility of the hearsay statements made by the child and the effect of section –411. At one point, defense counsel said:

I have filed a pretrial motion to limit them from using hearsay, as soon as I received their notice to intend to use the hearsay.

Later, the prosecutor said:

I would state, your honor, it is clear that this hearsay is applicable to our situa-

tion. I would also add that it is clear that the legislature intended that cases be handled in this manner and I think in drafting the present statute, the legislature was taking into account the reliability, the inherent source of reliability that there is in these sort of hearsay statements, where a child will say to his mother after something has happened to him something like in this case.... I would indicate to the court that there is a certain inherent believability, reliability, if you will, about this hearsay testimony that makes it similar to the other hearsay exceptions. And I believe this is why it has been treated differently and I would suggest to the court that that is the intention.

In response, defense counsel stated:

What they [the prosecution] are attempting to use here is a complete change in the rules. Under this section 411, it talks about hearsay. If you read that section of the law, it is such a drastic change, they had to enact certain procedures about the Judge's findings. It is such a change against the traditional laws about using out-of-court hearsay statements in situations such as this....

At the close of counsel's argument, the court ruled that "they can use the hearsay testimony.... The court is going to grant to the defense the objection at the outset, a continuing objection as to any hearsay questions which do come in throughout the course of the examination of the child." At trial, defense counsel on at least two occasions objected to the admission of out-of-court statements made by the child, and in each case, the court overruled the objection based on its earlier pretrial ruling.

In light of the above, I conclude that the trial court should have been alerted to its duty to make the reliability determination required by section 76–5–411(2). The court had before it defendant's written motion to limit testimony, which was filed in response to the State's notice of intent to use hearsay statements made by the child. Three of the grounds of defendant's motion were that the child's statements were unreliable. Defendant's written motion, together with the argument of both the prosecutor and defense counsel set out above, should have alerted the trial court to the necessity of making the determination required by section –411(2). As was pointed out in *State v. Nelson*, 725 P.2d 1353 (Utah 1986), the admission of a child victim's hearsay statements constitutes a drastic departure from our rules of evidence, and the legislature intended that those statements be admissible only after a very careful screening made by the trial court to determine, among other things, their reliability. I agree with the majority that because our decision in *State v. Nelson* had not then been handed down, the trial court may not have realized the necessity of making *written findings*. However, a casual reading of section –411 makes it clear that the court should make a *determination* of the reliability of the child victim's testimony. I find nothing in the record where the trial court did so. The State concedes that the trial court did not rule on the reliability of the child's statements. The hearsay statements were admitted without any screening to determine if the "interests of justice will best be served" by their admission. I strongly disagree with the majority that defense counsel did not focus the trial court's attention to reliability. Having made a written motion to exclude the hearsay statements and having referred the court to section –411 in his argument on that motion, it is difficult for me to understand what more he could have done to exact a reliability determination from the trial court. Our rules do not require counsel to object to the denial of a motion by the court in order to preserve the point on appeal, as the majority seems to require.

Even if it is conceded that defendant did not sharply focus the trial court's attention to the requirements of section –411(2), I would hold that the error was plain error and that we should reach it in this appeal. I believe that it was plain error because the trial court had its attention called to sections –410 and –411, and it is inconceivable to me that a child abuse case, with its radical departure from the rules of evidence, could be tried without giving those sections notice. Even the most cursory

glance at section –411 would alert the trial court to the necessity of determining the reliability of the child's out-of-court statements.

I conclude that this error was prejudicial. The child at the time the alleged offenses occurred was only two years of age. He was only five years of age at the time of trial. Thus, in his testimony at trial, he was recalling incidents which occurred between two and three years earlier. A few months before the child turned three, his mother brought a petition to modify the decree of divorce to limit defendant's visitation rights with the child. Even though her testimony at trial in the instant case placed three of the alleged sexual abuse incidents prior to the filing of her petition, nothing was mentioned or suggested in the petition about sexual abuse. Most importantly, however, the child's testimony continually changed, and he contradicted himself to the point of even denying that any abuse ever took place. There was no independent evidence which corroborated that sexual abuse ever took place other than statements the child allegedly made to his mother, his grandmother, and Mr. Harrison. In view of these circumstances, the section –411 determination as to the reliability of the child's out-of-court statements was imperative.

STEWART, J., concurs in the dissenting opinion of HOWE, Associate C.J.

STEWART, Justice (dissenting):

I concur with Associate Chief Justice Howe's dissenting opinion. I write separately because I disagree with the majority's discussion of the plain error rule. The majority states that the standard for determining whether there is plain or manifest error is "from our examination of the record, we must be able to say that it should have been obvious to a trial court that it was committing error." The requirement that the error be plain to the *trial court* arises from the majority's concern that, while the ends of justice should "not be lost sight of in the pursuit of procedural regularity," nevertheless, the trial court should "legitimately be said to have had a reasonable opportunity to address and correct it, even in the absence of an objection."

The majority opinion quite properly points out that the fundamental fairness of a trial may not be sacrificed to procedural technicalities based upon a defendant's failure to object in the trial court. However, if the majority's language is to be taken at face value, the implication of the majority rule is that plain error—no matter how egregious—cannot be noticed and acted upon by this Court if the trial court would not have recognized the error as being plain.[1] In truth, this Court has never adopted such a stingy application of the plain error doctrine. It is also clear that we have never indicated that we would search the record for error. It can hardly be maintained that an appellate court in the proper conduct of its business can, or should, spend the time searching for error in a case and in effect re-lawyer the entire matter from the ground up. Quite clearly, we have on a number of occasions noticed plain error and reversed trial court rulings when it was perfectly obvious that the error was not plain to the trial court. In-

1. It is true that the majority attempts to hedge its rule by declaring that the obviousness and harmfulness standards are related and by stating that "an error may be so harmful that we should exercise our discretion to correct it regardless of the lack of either an objection or objective obviousness." Majority opinion at note 11. Despite the majority's protestations that it is merely attempting to articulate a test and "spell out the considerations that will guide our discretion in determining whether to review a harmful error," the majority opinion does not clarify the standard of review to be applied in such cases for either members of the bar or this

Court. In fact, the majority opinion sets one standard in the text and then retreats from that standard in footnotes.

Furthermore, the standard articulated in the text by the majority erects an artificial barrier before defendants raising an issue on the basis of plain error. In my view, the Court should not in the future use the majority's procedural barrier to justify not reaching issues which should be reached on the basis of plain error simply because a majority of the Court cannot agree that the error was or should have been obvious to the trial court.

deed, in *State v. Wood*, 648 P.2d 71 (Utah), *cert. denied*, 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982), we reversed the trial court's standards for determining when the death penalty should be applied even though the trial court thought that it was carrying out the prior opinions of this Court. Indeed, the trial court's position in that case was not without foundation. And in *State v. Stenback*, 78 Utah 350, 365, 2 P.2d 1050, 1056 (1931), this Court addressed a point that had not been raised or argued on appeal, even though an objection had been made in the trial court and improperly sustained. Thus, the error, from the point of view of plain error analysis, was counsel's failure to raise on appeal the trial court's error. Counsel's error would not, and could not, have been known by the trial court.

As far as plain error is concerned, the doctrine clearly goes beyond the scope of rules of procedure. It is a doctrine which goes to the very heart of the adjudicatory process and therefore involves, at least in most cases, fundamental constitutional questions. All that our cases have required by way of standards for invoking the doctrine is the rather general requirement that the error must be palpable and "made to appear on the face of the record and to the manifest prejudice of the accused...." *State v. Cobo*, 90 Utah 89, 102, 60 P.2d 952, 958 (1936).

If the standard is drawn too narrowly, we simply put off consideration of reversible error until the case returns on a writ of habeas corpus. At that time, under the standards which we employ in those cases, we would then be compelled to entertain the question of whether the trial was fundamentally fair, irrespective of whether there were appropriate objections. *See, e.g., Chess v. Smith*, 617 P.2d 341 (Utah 1980). There simply is no reason for delaying such an inquiry; indeed, the whole thrust of criminal procedure in the area of appellate review of criminal convictions has been to try to avoid, where possible, collateral attacks on criminal convictions. For that reason, it makes sense to address at the earliest possible stage errors which might lead to reversals.

Furthermore, from the point of view of the liberty of individuals involved, it is intolerable to tell those persons who are imprisoned as a result of legal error that a procedural error on the part of their attorney has resulted in the forfeiture of rights, simply because the error, manifest though it may be, was not plain to the trial judge. I certainly cannot embrace that concept; I doubt that the majority embraces it, but it seems to me that the effect of the majority opinion is to reach that result.