STATE of Utah, Plaintiff and Respondent,

v.

Scott BRAUN, Defendant and Appellant.

No. 890150–CA.

Court of Appeals of Utah.

Feb. 20, 1990.

Michael J. Petro, Provo, for defendant and appellant.

R. Paul Van Dam and David Thompson, Salt Lake City, for plaintiff and respondent.

Before DAVIDSON, BILLINGS and ORME, JJ.

BILLINGS, Judge:

Defendant Scott Braun was charged with one count of object rape of a child, a first degree felony, in violation of Utah Code Ann. § 76-5-402.3 (1989), and two counts of sexual abuse of a child, a second degree felony, under Utah Code Ann. § 76-5-404.1 (1989), all counts involving his two daughters. A jury found defendant guilty of one count of sexual abuse of a child and acquitted him of the other two charges. Defendant appeals his conviction. We affirm.

We focus on the facts surrounding defendant's conviction of one count of sexual abuse of his daughter ("A.B."), as he was acquitted on the other counts.

A.B. was five years old at the time of the alleged abuse. At trial, she testified that her father took her into his bedroom and placed her on his bed. She testified she had no pants on, only a T-shirt. A.B. then testified that her father played a "game" called "Beep Beep," where he would touch her "belly button" twice and then touch her vagina. She testified that her father told her that he would "smack" her if she told anyone what had happened.

In addition to A.B.'s testimony, the state relied upon the expert testimony of Dr. William Palmer, a physician, and Dr. Ann Tyler, a psychologist. Dr. Palmer repeated what A.B. had told him about the abuse and then described the findings of his physical examination of A.B. He then testified that the results of his physical examination of A.B. were consistent with her story as to the object rape charge.

Dr. Tyler related the substance of her interviews with A.B. and commented on A.B.'s affect, compared A.B. to profiles of typical sexual abuse victims, and expressed her opinion that A.B. was a victim of sexual abuse.

Prior to trial, defendant requested an independent psychological evaluation of A.B. After hearing testimony concerning the possible trauma the child might suffer if examined by yet another expert, the trial court denied the request. However, the trial court allowed defendant's expert to comment on the video testimony of A.B.'s interview by the state's expert and to testify at length about the techniques used by the state's expert.

In addition to the expert witnesses, A.B.'s testimony was corroborated by her mother, Betsy Braun, and Betsy's friend, Cheryl Dagang, who both testified about conversations with A.B. and observations of A.B. and her sister which were consistent with the child's version of the events.

Based on this testimony, a jury convicted defendant of one count of sexual abuse. The trial judge sentenced defendant to a term of one to fifteen years in prison, but stayed the sentence and placed defendant on eighteen months' probation. This appeal followed. On appeal, defendant claims the trial court erred in (1) allowing expert opinion testimony on the credibility of A.B. and on whether A.B. had been sexually abused; and (2) denying defendant's motion to have an independent or court-appointed psychiatric or psychological evaluation of A.B.

## I. EXPERT OPINION TESTIMONY

Defendant contends the trial court erred in admitting expert testimony (1) on the credibility of the child, and (2) that the child was a victim of sexual abuse. The state answers that even if it was error, defendant did not object to the improper testimony at trial and, thus, cannot raise these issues on appeal. Defendant responds that he properly preserved his objections or, alternatively, that the admission of this defective expert opinion testimony was plain error and, thus, we should address the issues for the first time on appeal.

At the outset we note that "[w]e will not disturb the trial court's rulings regarding the admissibility of evidence unless it clearly appears that the lower court was in error." *Beldon v. Dalbo, Inc.*, 752 P.2d

1317, 1319 (Utah Ct.App.1988); *see also State v. Gray,* 717 P.2d 1313, 1316 (Utah 1986). Guided by this standard, we first determine if the admission of the expert opinion testimony was error.

The seminal case in this area is *State v. Rimmasch,* 775 P.2d 388 (Utah 1989). In *Rimmasch,* the defendant was convicted of forcible sexual abuse, rape, forcible sodomy, and incest of a child, based, in part, on expert opinion testimony, objected to by defendant at trial, that the child had been abused. In analyzing the challenged expert testimony, the *Rimmasch* court discussed three distinct categories: (1) testimony concerning the truthfulness of a child witness on a particular occasion, (2) testimony that there is a psychological and behavioral profile of the typical child sexual abuse victim, and that the victim conformed to the profile and therefore had been abused; and (3) testimony that, based on the expert's subjective "credibility appraisal" of the child during an interview, the child had truthfully described the abuse and therefore had been abused.

Focusing on the first area, the *Rimmasch* court held Dr. Tyler's testimony ran "afoul of Rule 608(a)," [1] *id.* at 392, since she commented on the truthfulness of the child victim on a particular occasion. The court specifically condemned Dr. Tyler's testimony that a child typically does not give such detailed information as the victim gave unless the child had experienced the abuse. *Id.* at 393. The court also expressed concern about her statement that she thought the child victim had nothing to gain by lying about the abuse. *Id.*

The court rejected the second and third type of "scientific" opinion testimony, concluding the state had not laid an adequate foundation to establish the reliability of the expert testimony to the effect that the child matched the profile of an abused child or, based on their expert "credibility appraisal," that she had truthfully described incidents of abuse and, therefore, had been abused. The *Rimmasch* court concluded that neither "credibility assessment" testimony nor child abuse profile testimony has been generally accepted by the legal or scientific communities, nor could the court say it was nevertheless inherently reliable and, therefore, judicial notice of the reliability of such opinion evidence would be inappropriate. *Id.* at 403. The court found the admission of this unreliable expert testimony violated Utah Rule of Evidence 702.[2] *Id.*

In discussing the "scientific" expert testimony concerning the profile of a typical sexual abuse victim offered by Dr. Palmer and Dr. Tyler, the same experts who testified in this case, the court found "little foundation was offered or demanded by the court as to the scientific basis for the profile of the typical sexually abused child, [or] the ability of the profile to sort the abused from the nonabused with any degree of accuracy." *Id.* at 395.

Finally, in discussing the "credibility appraisal" of the child victim made by the experts, the court concluded that "nothing has come to our attention suggesting a general acceptance of the proposition that those who regularly treat symptoms of sexual abuse are capable of determining with a high degree of reliability the truthfulness of allegations that one has been abused." *Id.* at 406. The court ultimately concluded that the cumulative evidentiary errors were

---

1. Utah Rule of Evidence 608(a) provides:
   Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

2. Utah Rule of Evidence 702 provides:
   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

harmful error and, thus, reversed and remanded the case for retrial. *Id.* at 407–08.

In *State v. Van Matre*, 777 P.2d 459 (Utah 1989), the Utah Supreme Court again reversed a conviction for sexual abuse of a child and sodomy based upon the improper admission of expert opinion evidence. The court concluded that, under *Rimmasch*, "it was reversible error to permit the experts to assess [the child's] credibility and to testify that [the child] matched certain profile characteristics of a typical sex abuse victim." *Id.* at 461. Summarizing its holding in *Rimmasch*, the court stated:

> We concluded ... that experts may not give a direct opinion about the truthfulness of a child's description of the incidents of sexual abuse. We determined also that the inherent reliability of the scientific principles and techniques upon which credibility appraisals and profile-based opinion testimony are predicated must be determined before a trial court can admit that evidence.

*Id.* Interestingly, the court does not comment on whether defendant had objected to this testimony at trial.

In *State v. Nelson*, 777 P.2d 479 (Utah 1989), the court reversed a sodomy on a child conviction because it found error in the admission of expert testimony evaluating the credibility of the victim's out-of-court statements. The expert witness attempted to satisfy the foundational requirements subsequently delineated in *Rimmasch* for a "credibility assessment" by detailing the methodology he used in determining whether a person was telling the truth. He testified that he considered internal consistency, external consistency, the amount of detail, and the child's motivation. *Id.* at 480–81. He applied these factors to the victim's statements and concluded the child was telling the truth. *Id.* at 481. The court concluded, however, that under *Rimmasch*, there was inadequate foundation as to the reliability of the expert's methodology. *Id.*

We now measure the expert opinion testimony admitted in this case against the yardstick provided by *Rimmasch* and its progeny to determine whether the expert opinion testimony was admitted in violation of rules 608(a) or 702.

## A. *Dr. Palmer's Testimony*

In his brief on appeal, defendant contends Dr. Palmer testified that A.B. had been sexually abused. The record does not support his claim. At trial, defense counsel objected when Dr. Palmer was asked if he believed the child had been sexually abused and Dr. Palmer never responded to the question. The question actually asked and answered by Dr. Palmer, without objection, was rather whether the doctor's findings, based on his physical examination of A.B., were consistent with her out-of-court statements to him. Furthermore, the testimony defendant complains about on appeal was directed to the object rape charge of A.B. of which defendant was acquitted and which is not at issue on appeal.

## B. *Dr. Tyler's Testimony*

Defendant also claims that the court erred in admitting the testimony of Dr. Tyler concerning the credibility of the child and that the child exhibited characteristics which matched the profile of a sexually abused child and, thus, had been abused. Defendant asserts that the state did not lay a proper foundation for Dr. Tyler's testimony under rule 702 as required by *Rimmasch*.

█ Dr. Tyler did not comment directly on whether A.B. was telling the truth and we therefore find no rule 608(a) problem. However, she did, through the use of a "scientific credibility assessment," conclude A.B. had truthfully described the incidents of abuse. In her "credibility assessment," Dr. Tyler considered many of the nebulous psychological criteria condemned in *Rimmasch*. Dr. Tyler also testified extensively on the profile of a sexually abused child and baldly asserted these profiles are generally accepted in her profes-

sion. Dr. Tyler ultimately testified that A.B. matched the profile of a sexually abused child and, thus, she concluded A.B. had been sexually abused. The state offered no foundational testimony as to the scientific reliability or general acceptability for the use of either the sexual abuse profile or the "credibility assessment" testimony. *See Rimmasch*, 775 P.2d at 403. In sum, Dr. Tyler's testimony in this case was substantially the same as her opinion testimony condemned as lacking foundation under rule 702 in *Rimmasch*. Therefore, we conclude it was error for the trial court to have admitted her testimony.

## II. CONSIDERATION OF ERROR ON APPEAL

### A. *Proper Objections*

Defendant contends that his counsel made timely, specific objections to the testimony of both of the state's expert witnesses. We do not discuss the objections to Dr. Palmer's testimony as we have previously found that any error in admitting Dr. Palmer's testimony was not relevant to defendant's conviction of sexual abuse of A.B.

▬ Upon a careful review of the trial record, we also find that defendant failed to lodge a timely and specific objection to the inadmissible testimony of Dr. Tyler. Defendant requested the trial court to bar Dr. Tyler from testifying. However, defendant's motion was based upon the state's failure to provide the defense with an updated statement of her testimony as a result of her interview with the child just prior to trial.

Defendant also claims that, during the earlier testimony of Dr. Palmer, he had preserved a continuing objection to any expert testimony on whether the child had been sexually abused. The precise exchange, with our emphasis, follows:

Q [MR. HANSEN]: After the results of your examination and your interview with [A.B.] do you have an opinion as to whether or not she was sexually abused?

MR. PETRO: Your Honor I object to that question. He has never laid any foundation that he is qualified to answer that question and I would object to it. He is certainly not qualified. He has not been trained as a psychologist and not qualified to answer that question? That issue has been before the Supreme Court?

THE COURT: Mr. Hansen?

MR. HANSEN: He testified about the number of examinations he had the clinical experience that he had that he is the director now of the Child Protection Team at the Primary Children's Hospital. That in the course of his employment and his duties he conducts numerous interviews and evaluations and examinations of sexually abused children. He went into his qualifications in this particular area. He has had an opportunity now to conduct physical evaluations of this girl and also an interview with her. She now has indicated to him what has happened to her. Based on the results of his evaluations and his interviews I am now asking him what his opinion is?

MR. PETRO: Your Honor that issue has gone up before the Supreme Court on the same exact issue and they laid exactly the same foundation and asked exactly the same question of Dr. Palmer and the Supreme Court said that he was not qualified to do it based on the foundation they had laid. *He is not a trained psychologist to interpret all the responses of the child set forth and he cannot render an opinion on whether or not the child has been abused.* All he can really say is that the physical findings are consistent with what the child said. He is not qualified to examine the statements of the child and determine whether or not the child is telling the truth or not.

We cannot read this as a continuing objection to all expert testimony as to whether the child had been abused. Defense counsel did not point out to the court that

he objected generally to this type of opinion testimony or ask that his objection apply to any expert witness testifying as to whether the child had been sexually abused. In fact, defense counsel specifically stated that Dr. Palmer was not a psychologist so he could not answer the question, inferring that he believed a psychologist, such as Dr. Tyler, could testify in this area.

Thus, defendant objected to the admission of Dr. Tyler's testimony solely on the basis of a discovery violation. Defendant's objection certainly cannot be said to have alerted the trial court to the foundational problem of Dr. Tyler's testimony under rule 702 and, thus, he did not preserve the objections he now asserts on appeal. *See State v. Eldredge,* 773 P.2d 29, 35 (Utah 1989), *cert. denied,* — U.S. —, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989) ("[a]n objection based on competency does not call the trial court's attention to the reliability issue").

### B. *Plain Error*

However, this does not end our inquiry since we can still cure the error on appeal if we believe the trial court committed plain error.[3] *See Eldredge,* 773 P.2d at 35. *See also State v. Gibbons,* 740 P.2d 1309, 1311 (Utah 1987); *State v. Steggell,* 660 P.2d 252, 254 (Utah 1983). Defendant contends that the errors constitute plain error, pointing to the policy underlying plain error—to allow the court to reach justice in a given case. *Eldredge,* 773 P.2d at 35 n. 8. The state answers that any error made in the admission of Dr. Tyler's testimony cannot be dealt with under the plain error doctrine because the errors would not have been obvious to the trial court.

In *Eldredge,* also a child sexual abuse case, the supreme court discussed the doctrine of plain error in depth. In *Eldredge,* the defendant had failed to object to the admission of hearsay statements by a child victim or to request findings on the admissibility of the hearsay statements by the child victim under Utah Code Ann. § 76–5–411 (1983). On appeal, defendant argued that the Utah Supreme Court should reach the issue under the plain error doctrine. The court set out a two-step test for the application of the plain error doctrine on appeal. First, the error must be "plain," which means that "from our examination of the record, we must be able to say that it should have been obvious to a trial court that it was committing error." *Eldredge,* 773 P.2d at 35. Second, the error "must affect the substantial rights of the accused, i.e., that the error be harmful." *Id.*

The *Eldredge* court, in determining not to apply the plain error doctrine, noted that the "language of section 76–5–411 does not expressly require written findings regarding reliability, and the trial court did not have the benefit of [a later] appellate decision interpreting the statute's requirement" and, thus, the error could not have been obvious to the trial court. *Id.* at 36.[4]

This is precisely the situation presented here as the trial court did not have the benefit of *Rimmasch* and its progeny to guide it when faced with the admissibility of the expert testimony, nor does the language of rule 702 point to an inherent reliability requirement for this type of expert testimony.

In fact, as the state points out, the controlling authority at the time of the trial in

**3.** Utah Rule of Evidence 103(d) provides: "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."

**4.** In *State v. Bullock,* 791 P.2d 155 (Utah 1989), the Utah Supreme Court also addressed the issue of plain error. The court did not reach the issue of plain error, however, concluding that "we do not appraise all rulings objected to for the first

time on appeal under the plain error doctrine. For example, if trial counsel's actions amounted to an active, as opposed to a passive, waiver of objection, we may decline to consider the claim of plain error." *Id.* at 158. The court concluded that defense counsel had failed to object to the testimony as part of his trial strategy and, thus, denied his request to apply the plain error doctrine.

this case supported the admission of the testimony. In *State v. Lairby*, 699 P.2d 1187 (Utah 1984) (decided under the old rules of evidence, but with language substantially similar), *overruled on other grounds, State v. Ossana*, 739 P.2d 628, 631 n. 8 (Utah 1987), the court in dicta suggested that expert testimony on the issue of whether a child had been sexually abused was admissible. *Id.* at 1200–01. The *Rimmasch* court spoke of the confusion in the *Lairby* language and stated that *Lairby* did not resolve any "threshold reliability doubts" of the admissibility of expert testimony concerning whether a child had been sexually abused. *Rimmasch*, 775 P.2d at 400.

Even the *Rimmasch* court, before tackling this difficult evidentiary question, acknowledged the new and controversial ground it was breaking, noting that "[r]esolution of this question requires an examination of the interrelationship of the new rules of evidence and our old case law and raises issues that are the subject of continuing debate across the nation in states that have used the Federal Rules of Evidence as a model." *Id.* at 396. We, like the *Eldredge* court, cannot say the error of admitting Dr. Tyler's testimony should have been plain to the trial judge.

■ Defendant argues that even though the error of admitting Dr. Tyler's testimony would not have been obvious to the trial judge, this does not prevent us from applying the doctrine of plain error to prevent an "obvious injustice." He points to dicta contained in footnote 8 in *Eldredge*, claiming we should ignore the "obviousness" requirement. Footnote 8 provides:

> We note that the two plain error requirements of obviousness and harmful-

ness are related and that the obviousness requirement poses no rigid and insurmountable barrier to review. For example, the more harmful an error is, the more likely an appellate court is to conclude that it was objectively obvious, because a high degree of harmfulness might be expected to attract a trial court's attention. On the other hand, in appropriate cases we can exercise our discretion to dispense with the requirement of obviousness so that justice can be done, as when an error not readily apparent to the court or counsel proves harmful in retrospect.

> ... At bottom, the plain error rule's purpose is to permit us to avoid injustice. No statement of the factors that are important to our deliberations on the point should be read to limit our power to achieve that end.

*Id.* at 35 n. 8.

We acknowledge that the Utah Supreme Court in dicta, alluded to a possible narrow exception to the obviousness requirement of the plain error doctrine. However, we do not find the situation described in footnote 8 applicable in this case. We need not decide whether the admission of Dr. Tyler's testimony might have constituted harmful error if properly objected to at trial.[5] When we look at the record as a whole, the admission of her testimony does not present the "high degree of harmfulness" required in order to warrant our waiver of the obviousness requirement. Substantial corroborative testimony was admitted at trial which supported defendant's conviction and we therefore do not believe an "obvious injustice" occurred.

Betsy Braun, the child's mother, testified that (1) A.B. told her that defendant was

---

5. Had we reached this issue, we would have been required to determine whether the error of admitting Dr. Tyler's testimony was prejudicial. "Unless our confidence in the outcome is undermined by the error, prejudicial error has not been shown." *State v. Lafferty*, 749 P.2d 1239, 1255 (Utah 1988). *See, e.g., State v. Bates*, 784 P.2d 1126, 1128 (Utah 1989) ("The other evidence against defendant was not overwhelming.

The jury acquitted him of one of the three counts."); *State v. Ramsey*, 782 P.2d 480, 485 (Utah 1989) (There was substantial evidence supporting the conviction for sexual abuse: the two children testified and there was also physical evidence to support their testimony. "Thus, the experts' testimony was not crucial, since the testimony of the children was sufficient to convict.").

kissing her with his tongue, (2) that A.B. told her that her father had hurt her, (3) that A.B.'s vagina was often sore and red, and (4) that A.B. had once put her head in between her younger sister's legs and the child had wrapped her legs around A.B.'s head and "started saying [A.B.] loves me, [A.B.] loves me."

A friend of the mother's, Cheryl Dagang, testified that A.B. told her about playing "Beep Beep" with defendant, that she witnessed the episode where A.B. put her head between her sister's legs, and that A.B. said defendant kissed her with his tongue.

Thus, based upon the record as a whole, we conclude that in balancing the obviousness requirement against the egregiousness of the error, the plain error doctrine should not be applied to reverse defendant's conviction.

## III.  INDEPENDENT PSYCHOLOGICAL EXAMINATION

■ Defendant's final claim is that the trial court erred in denying his motion for an independent psychological examination of A.B.  The trial court had the discretion to order that A.B. be produced for a psychological examination.  Utah Rule of Civil Procedure 35(a).  In *Stone v. Stone*, 19 Utah 2d 378, 431 P.2d 802, 803 (1967), the court ruled that rule 35(a) "applies to any action in which the mental or physical condition of a party is in controversy."  The *Stone* court noted, however, that the decision to make such an order is not mandatory, but is within the sound discretion of the court.  *Id.* 431 P.2d at 803–04.  In *State v. Lairby*, 699 P.2d 1187 (Utah 1984), *overruled on other grounds, State v. Ossana*, 739 P.2d 628, 631 n. 8 (Utah 1987), the court reaffirmed its position.  "[T]he determination as to whether such an examination should be had must necessarily rest largely within the discretion of the trial judge."  *Id.* at 1197 (quoting *State v. Hubbard*, 601 P.2d 929, 930 (Utah 1979)).  Thus, we must determine whether the trial court abused its discretion when it refused

to allow an independent evaluation of the child.

The trial judge denied the examination as cumulative and because he found A.B. would be unnecessarily traumatized by yet another interview by an expert.  The judge did allow defendant's expert witness, Dr. Golding, to testify at length concerning the mistakes he believed Dr. Tyler made in interviewing the child.  Dr. Golding studied all of the reports and video tapes relied upon by the state and step by step at trial attacked the techniques used.  He further testified that those techniques were not accepted by a majority of the members of his profession.  Dr. Golding testified, over the state's objection, that, in his professional opinion, using the information available to the experts, he could not conclude, nor did he believe any other expert could have concluded, that A.B. had been sexually abused.  In light of Dr. Golding's testimony, we conclude that defendant accomplished his goal of discrediting Dr. Tyler's testimony by utilizing Dr. Golding and, thus, the trial court did not abuse its discretion in refusing to allow Dr. Golding to personally interview the child.

In conclusion, we find that defendant did not preserve his objection to the *Rimmasch* expert opinion testimony he now complains about on appeal nor did the admission of this testimony constitute plain error.  Finally, the trial court did not abuse its discretion when it refused to order an additional independent interview of A.B.  Defendant's conviction is affirmed.

DAVIDSON and ORME, JJ., concur.