STATE of Utah, Plaintiff and Appellee,

v.

John QUAS, Defendant and Appellant.

No. 890601–CA.

Court of Appeals of Utah.

Feb. 6, 1992.

Rehearing Denied March 9, 1992.

Lisa J. Remal, Candice A. Johnson, and Elizabeth Holbrook, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Judith S.H. Atherton, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

GARFF, Judge:

Appellant, John Quas, appeals his conviction of second degree murder, a first degree felony, in violation of Utah Code Ann. § 76–5–203 (1991).  We affirm.

We recite the facts from the record in the light most favorable to the jury's verdict. *State v. Johnson*, 784 P.2d 1135, 1137 (Utah 1989). On the evening of June 15, 1987, appellant John Quas and his wife Susan Quas were at home. Both had been drinking. The two began to argue and to discuss divorce. Sometime that evening, appellant allegedly shot and killed Mrs. Quas. At 9:41 p.m. appellant called the Salt Lake County 911 operator to report that his wife had shot herself. A police officer and paramedics arrived within four minutes of appellant's call. Mrs. Quas was found dead, lying on some sheets in the living room with a gunshot wound in her left eye. Appellant said he had been in the shower, heard a gunshot, and came out to find his wife lying on the floor.

On June 16, 1987, appellant was charged with second degree murder. After a preliminary hearing before a magistrate, the information was dismissed for lack of probable cause to bind defendant over for trial. A year later, on July 5, 1988, the information was refiled. A second preliminary hearing was held before the same magistrate. On October 24, 1988, the magistrate found that refiling was appropriate based on new or previously unavailable evidence. The magistrate determined that the new evidence, along with the evidence presented at the former hearing, gave rise to probable cause to bind appellant over to stand trial.

Appellant moved the district court to quash the bindover order. The State moved to strike appellant's motion to quash. The district court granted the State's motion on the ground that it lacked jurisdiction to review the sufficiency of evidence presented at the preliminary hearing. Appellant petitioned the Utah Supreme Court for permission to appeal from the district court's interlocutory order, and the court denied permission. The district court then accepted the information, and appellant was tried and convicted of criminal homicide, murder in the second degree. He appealed the conviction to the Utah Supreme Court, which, pursuant to Utah Code Ann. § 78-2-2(4) (1991), transferred the appeal to this court.

The issues on appeal are: (1) whether the district court had jurisdiction to review the bindover order; (2) whether the district court correctly accepted the information for purposes of proceeding to trial; and (3) whether the court properly concluded that the trial testimony of expert witnesses from the State Medical Examiner's Office did not violate Rules 403, 404 or 702 of the Utah Rules of Evidence.

## DISTRICT COURT REVIEW OF BINDOVER

■ The first issue is whether the district court had jurisdiction to review the bindover order. *State v. Humphrey*, 823 P.2d 464 (Utah 1991) is dispositive of this issue. The *Humphrey* court held that "the district court has the inherent authority and the obligation to determine whether its original jurisdiction has been properly invoked." *Id.* at 465. In other words, "it is always proper for a trial court, as a threshold jurisdictional matter, to consider whether it has jurisdiction over a criminal defendant." *Id.* at 468. Further, Rule 12(b)(1) of the Utah Rules of Criminal Procedure "explicitly gives district courts authority to review 'defects in the indictment or information.'" *Id.* at 466.

■ Applying *Humphrey*, we hold that the district court erred in its initial refusal to review the bindover order. However, this error was harmless. *Humphrey* suggests that a challenge to a bindover order is mooted once a defendant has been convicted beyond a reasonable doubt. *Id.* at n. 6. The Utah Supreme Court held: "We believe this right [to a review of bindover orders] likewise would not be satisfied if the defendant first had to endure trial in the district court, because any challenges to the bindover order would be mooted by the trial verdict." *Id.*

This holding is supported by case law from the United States Supreme Court and from this state establishing that an error at the preliminary stage is cured if the defendant is later convicted beyond a reasonable doubt. *United States v. Mechanik*, 475

U.S. 66, 70, 106 S.Ct. 938, 942, 89 L.Ed.2d 50 (1986) (presence of two witnesses in grand jury room, although illegal, is harmless beyond a reasonable doubt in light of subsequent conviction); *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 4, 54 L.Ed. 1021 (1910) (conviction upheld where errors such as hearsay and incompetent evidence occurred at indictment stage); *see also State v. Schreuder*, 712 P.2d 264, 272 (Utah 1985) (the fact defendant was convicted cured any defect in temporary period of possibly wrongful detention) (citing *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 866, 43 L.Ed.2d 54 (1975)).

Therefore, the question as to whether the information should have been quashed by the district court is moot because any defect was cured by defendant's conviction beyond a reasonable doubt.

## EXPERT TESTIMONY

We now consider issues pertaining to the trial itself. Appellant argues that the testimony of Dr. Todd Grey, the medical examiner, and that of Brent Marchant of the State Medical Examiner's Office, to the effect that the nature of the victim's wounds was more consistent with homicide than with suicide, violated Rules 403, 404 and 702 of the Utah Rules of Evidence.

■ Because no contemporaneous objections to this testimony were made, appellant has waived his right to raise the matter on appeal, *State v. Eldredge*, 773 P.2d 29, 34–35 (Utah), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989), unless the testimony is plain error, *id.; State v. Braun*, 787 P.2d 1336, 1341–42 (Utah App. 1990), or unless there are unusual circumstances. *See State v. Archambeau*, 820 P.2d 920, 922–26 (Utah App.1991).

■ Rule 103(d) of the Utah Rules of Evidence provides "[n]othing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." The Utah Supreme Court established a two-part test to determine plain error. First, the error must be "plain." That is, "it should have been obvious to a

trial court that it was committing error." *Eldredge*, 773 P.2d at 35. Second, the error must affect the substantial rights of the accused. That is, the error must be harmful. *Id.* The policy behind the plain error test is to allow the court to reach justice in a given case. *Id.* at 35 n. 8; *Braun*, 787 P.2d at 1342. *See* Utah R.Evid. 102.

■ The transcript reveals that Dr. Grey did not give psychological profile testimony, condemned in *State v. Rimmasch*, 775 P.2d 388, 400–03 (Utah 1989), nor did he vouch for the truthfulness of a witness's testimony based on anecdotal "statistical" evidence, condemned in *State v. Rammel*, 721 P.2d 498, 501 (Utah 1986) and also in *State v. Iorg*, 801 P.2d 938, 941 (Utah App.1990).

Instead, Dr. Grey addressed the issue of whether the victim died via suicide or homicide by examining the physical evidence of the victim's body and by demonstrating the hypothesis of suicide using a live model whose arm length was identical to that of the victim. He had the model hold the gun in various positions to see whether it was possible for Mrs. Quas to shoot herself with the muzzle sixteen to eighteen inches away from the entry wound and with the gun oriented so that the bullet path would correspond to that of the victim. He had the model hold the gun with either hand, with both hands, and in a position so she could fire using her thumb. He also had the model hold the gun in these various positions with her arms extended as far as possible. He testified that the gun could be held in the right hand at fourteen or fifteen inches away, in the left hand at fourteen inches away, or in both hands at twelve and a half or thirteen inches away. He concluded that, while it may have been technically possible for Mrs. Quas to shoot herself,

it's a very cumbersome and in my experience completely atypical way for somebody to commit suicide. When people shoot themselves, they usually put the gun where they want the bullet to go and pull the trigger. I've never seen a clearly proven suicide where the person has

held the gun as far as away from their body as they possibly can before shooting.

Here, the gist of the testimony goes to the fact that, if the victim had committed suicide, she chose a physically awkward and hence unlikely method to carry out the deed.

Both *Rammel* and *Iorg* condemn the use of evidence "concerning matters not susceptible to quantitative analysis such as witness veracity," because such evidence leads to undue prejudice. *Iorg,* 801 P.2d at 941–42. However, *Rammel* and *Iorg* do not apply in this case. First, Dr. Grey's testimony was not offered as statistical evidence that Mrs. Quas did not commit suicide. Rather, the testimony was offered to prove that, while it was technically possible to achieve suicide given the circumstances, it would have been "cumbersome" and "atypical." Second, Dr. Grey was not vouching for another witness's veracity, nor was he giving statistical probabilities for another's veracity. Third, even if the remark were prejudicial, it was not sufficiently obvious to invoke the plain error exception, especially in light of the corroborating evidence offered by this and other witnesses.[1]

 Brent Marchant, an investigator with the State Medical Examiner's Office, did not opine as to whether the death was a homicide or suicide. Neither did he testify as to the profile of a hypothetical suicide victim. He testified that Mrs. Quas's wound was unusual because, from his ten years' experience investigating many of the one hundred and fifty gunshot suicides that occur in Utah each year, he had seen only one suicide gunshot wound inflicted in the eye. That wound was a direct contact wound, unlike that of the victim. Therefore, even if Marchant's statement were erroneously admitted, the error is not sufficiently obvious to invoke the plain error exception.

As to the other issues appellant raises on appeal, we have reviewed them and find them to be without merit. *See State v. Carter,* 776 P.2d 886, 896 (Utah 1989).

### CONCLUSION

Appellant's conviction beyond a reasonable doubt mooted any defects in the bindover order. The experts' conclusion that the evidence supported a homicide rather than a suicide did not constitute plain error. We therefore affirm.

BILLINGS and ORME, JJ., concur.

---

1. While the requirement of obviousness may be waived in cases of "a high degree of harmfulness," we do not find such a degree of harmful-ness in this case in light of the corroborating evidence. *Eldredge,* 773 P.2d at 35 n. 8; *Braun,* 787 P.2d at 1342.