513 P.2d 970

**ROYAL GLOBE INSURANCE COMPANY, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Efriam G. Haro, Respondent Employee.**

**No. 1 CA–IC 816.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 11, 1973.

Rehearing Denied Oct. 30, 1973.

Review Denied Dec. 11, 1973.

Lesher & Scruggs by D. Thompson Slutes, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Ira Schneier, Tucson, for respondent employee.

## OPINION

DONOFRIO, Presiding Judge.

This appeal is before us on a writ of certiorari to review the lawfulness of findings and award by The Industrial Commission of Arizona determining that a heart attack (acute myocardial infarction) suffered by respondent Efriam G. Haro (Haro) arose out of his employment, thus awarding him medical, surgical and hospital benefits.

On August 30, 1971, Haro suffered a heart attack while on the job for M. J. Lang Construction Company. At the time of his injury his job responsibility was to operate a "tamper", a machine which weighs approximately 100 pounds and with which he had little familiarity. The soil where he was operating the machine was very damp which caused the tamper to bog down, accumulating dirt on the bottom of the machine, thus making it heavier to operate.

On October 7, 1971, Haro filed an application for workmen's compensation benefits, alleging he had sustained personal injury during the course and scope of his employment while working as a laborer with the aforementioned employer.

On October 20, 1971, the petitioner insurance carrier issued its notice of claim status denying Haro's claim. On October 27, 1971, Haro timely filed a request for hearing, and pursuant thereto formal hearing was held on February 18, 1972.

On March 13, 1972, the hearing officer made a finding that the myocardial infarction did arise out of Haro's employment and therefore awarded medical, surgical and hospital expenses from the day of the incident, being August 30, 1971, and also awarded compensation for temporary disability from and after that date.

The petitioner here, the insurance carrier for M. J. Lang Construction Company, then made a timely request for review, and upon review the hearing officer's award was affirmed. This petition for a writ of certiorari followed.

The sole issue on appeal is whether there is reasonable evidence to support the findings and award of the Commission. Petitioner contends that the Commission committed error in making its determination upon medical opinion which, it argues, was based upon erroneous facts.

In reviewing the file we note the initial report of the attending physician, Dr. A. J. Price, at St. Joseph's Hospital (where Haro was admitted), indicates first treatment on August 30, 1971, at 9:45 a. m. and that Haro was hospitalized with a diagnosis of "acute myocardial infarction, secondary to physical strain and arteriosclerotic coronary arteries." The workman's report further states that Haro was using a heavy tamper on damp ground and that it stuck in the soil three times, requiring him to lift it. The third time he lifted it he developed chest pains.

At the formal hearing held on February 18, 1972, the medical testimony was provided by Dr. Hector Garcia, a physician specializing in cardiology, who became Haro's main treating physician. He took Haro's case history some five days after the accident. He testified that he felt there was a causal connection between the man's work and the heart attack because, as he understood it, the tamper Haro was using was stuck in the wet soil or mud on

three separate occasions and that Haro had to lift it out each time himself. He further understood that Haro suffered some chest pain after the first incident, more after the second incident, and a great deal of chest pain after the third, at which time he quit working. He testified that in his opinion the sticking of the tamper in the mud on these three occasions, which required an unusual amount of exertion for Haro to remove it, precipitated the heart attack. Dr. Garcia denied that the act of using the tamper itself, and the fact that it caused great vibration, was any causative force with respect to the heart attack. He was resolute in his testimony as to what he believed to be the cause of the heart attack. He testified that after looking at the EKG and blood enzyme tests which were performed on Haro, there were enough changes with his history to suggest that he did have a heart attack, diagnosed as an acute myocardial infarction.

The record reflects that at the time of the hearing, some six months after the incident in question, Haro's memory appeared somewhat faulty in trying to recollect the events of August 30, 1971. He testified that he had lifted the tamper on one occasion only, that he had help in lifting it, and that 20 minutes later he experienced the chest pains. He explained the conflict concerning the history of the accident by stating he could not remember the details of the episode at the time he was taken to the hospital and that Dr. Price did not speak Spanish. (At the hearing, his testimony was related by an interpreter). In reviewing the record we have noted inconsistencies in his testimony, including his apparent lapse of memory as to where he then presently resided, which we believe could lead the hearing officer to temper the weight given to such testimony.

■ Generally, in a heart attack case, the causal connection between the heart attack and the work activities must be proved by medical experts. Employers Mut. Liab. Ins. Co. of Wis. v. Industrial Com'n, 15 Ariz.App. 288, 488 P.2d 493

(1971). In order for a claimant to establish a claim for compensation for disability resulting from a heart attack, he has the burden of proving that the exertion of his job precipitated the heart attack. Rabago v. Industrial Commission, 5 Ariz.App. 563, 429 P.2d 14 (1967). Furthermore, a medical opinion alone cannot be the basis for an award, but the medical opinion must be based upon the finding of medical facts by the doctor involved. Hemphill v. Industrial Commission, 91 Ariz. 322, 372 P.2d 327 (1962). Dr. Garcia gave a complete history of EKG's and blood enzyme studies, and based upon the history given him by Haro and his examinations of Haro, we believe that he had ample findings of medical facts concerning Haro's condition to support his aforestated opinion that the heart attack was precipitated by the exertion expended on his job activity.

■ It is the duty of the Commission, as the trier of fact, to resolve all conflicts in the evidence, and to draw warranted inferences. Where more than one inference may be drawn, the Commission may choose either, and this Court will not disturb the Commission's conclusion unless it is wholly unreasonable. Malinski v. Industrial Commission, 103 Ariz. 213, 439 P.2d 485 (1968). In addition, as the trier of fact, the hearing officer is the judge of the witnesses' credibility. Russell v. Industrial Commission, 98 Ariz. 138, 402 P.2d 561 (1965). Furthermore, the testimony of a witness may be disregarded where the testimony has been impeached or contradicted or the circumstances are such as to cast doubt upon its credibility. Reed v. Industrial Commission, 3 Ariz.App. 597, 416 P.2d 1018 (1966).

■ The Industrial Commission also must evaluate all the evidence and it may reject testimony when it appears that there are matters which impair its accuracy. This may arise when the intrinsic character of the evidence or the extrinsic circumstances cast suspicion upon the evidence. International Metal Products v. Industrial Com'n, 7 Ariz.App. 157, 436 P.2d 935

(1968). If a witness makes contradictory statements in regard to the material issues of a case, the trier of fact may accept as true either statement, or, on account of the discrepancy, may disregard the testimony of the witness entirely. Rowe v. Goldberg Film Delivery Lines, Inc., 50 Ariz. 349, 72 P.2d 432 (1937).

 In the case at bar we find that the hearing officer could reasonably have disregarded the inconsistent and befuddled testimony of the somewhat confused applicant given at a hearing held some six months after the incident in question. It is our opinion that there is reasonable evidence to support the Commission's finding that the heart attack did arise out of Haro's employment, and to support the award entered thereto.

Affirmed.

OGG and STEVENS, JJ., concur.