543 P.2d 795

**S. L. C. LEASING and Argonaut Insurance Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Rip R. Renn, Respondent Employee.**

**No. I CA–IC 1353.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 23, 1975.

Rehearing Denied Jan. 27, 1976.

Review Denied Feb. 24, 1976.

Jennings, Strouss & Salmon, by Ronald H. Moore, Phoenix, for petitioners.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Killian & Legg, by Vernon L. Nicholas, Mesa, for respondent employee.

OPINION

SCHROEDER, Judge.

Respondent employee, Rip Renn, was awarded benefits for an epileptic condition which the Industrial Commission found attributable to a blow to the head sustained in the course and scope of employment.

Petitioners, Renn's employer, S.L.C. Leasing, and its carrier, Argonaut Insurance, challenge the sufficiency of the neurological evidence upon which the Commission relied in finding the causal relationship between the original injury to the head and a seizure experienced by Renn some months later. While the evidence in this record reflects the inherent difficulties in diagnosing the cause of such brain disfunctions, we conclude that the testimony of Renn's treating neurologist is fully sufficient to sustain the award.

The underlying facts are that Renn, while employed for S.L.C. Leasing, struck his head on an air conditioning unit. In the resulting fall, he struck his head again on an automobile bumper. The accident produced an open wound on the head, and Renn was apparently stunned. While Renn could not remember whether he was actually unconscious, at least one witness testified that he was unconscious for one to two minutes. Renn received treatment for the wound that day, and returned to work without losing any time. However, he subsequently experienced short periods of disassociation, and on January 7, 1974, he experienced a grand mal seizure. He thereafter received extensive diagnostic testing and treatment for a serious impairment of brain functioning.

Because the disputed issue relates to causation, we examine in some detail the expert medical evidence produced at the hearing. The testimony was provided by two neurosurgeons, one psychiatrist, one psychologist, and one ophthalmologist.

Renn's treating physician from January of 1974 through the time of the hearings was G. Scott Tyler, M.D., a neurologist. He testified that, on the basis of the patient's history and an extensive battery of tests, Renn was suffering from posttraumatic epilepsy as a result of the June, 1973 industrial accident.

■ The other neurologist, John A. Eisenbeiss, M.D., examined Renn once, and he expressed the opinion that Renn's problems were the product of a pre-existing central nervous system disease. However, as the hearing officer expressly pointed out, Dr. Eisenbeiss concurred with Dr. Tyler that if Renn had been unconscious following the blow, that fact would support Dr. Tyler's diagnosis of posttraumatic epilepsy.*

■ Melvin Gerber, M.D., an ophthalmologist, examined Renn on several occasions and performed several optical tests. The most important of these were visual field tests. He concluded, based solely upon the visual tests, and without reference to other tests conducted by Dr. Tyler, that Renn was suffering a progressive loss of peripheral vision, and that such progressive loss was not characteristic of a traumatic etiology. However, Dr. Gerber refused to rule out trauma as a cause of the problem.

Paul M. Bindelglas, M.D., a psychiatrist who treated Renn for depression, while deferring to the neurologist on the question of medical causation, did feel he was within his field of expertise in diagnosing respondent's depression as a result of a "relatively recent insult to the brain." Harold E. McNeely, Ph.D., a clinical psychologist, testified that respondent was suffering from a brain injury of relatively recent origin, i. e., sometime within the past two months to two years, which in his opinion could have been caused by trauma.

From this variety of findings and opinions, petitioners correctly point out that there is substantial agreement that a progressive worsening of Renn's condition would indicate that it was not the result of

---

* The hearing officer accepted the lay testimony that Renn was unconscious after the accident. Petitioners ask this Court to discount that testimony. This we decline to do; the testimony of a co-worker was uncontroverted that he was unconscious. Any problems of credibility or inconsistencies are in the province of the hearing officer and not for this Court to resolve. *Royal Globe Insurance Co. v. Industrial Commission of Arizona*, 20 Ariz.App. 432, 513 P.2d 970 (1973).

the traumatic injury received in the industrial accident. It is at this point, however, that the medical evidence diverges. Dr. Gerber, referring only to the visual field tests, concluded that the condition was progressive. Dr. Tyler, on the other hand, relying principally on the results of the electroencephalogram tests (EEG) concluded that the condition was not progressive. We have, therefore, at best, a conflict in the medical evidence. This Court will not disturb the Industrial Commission's resolution of such conflicts. *State Compensation Fund v. Keefe*, 22 Ariz.App. 311, 526 P.2d 1266 (1974); *Cowan v. Industrial Commission of Arizona*, 18 Ariz. App. 155, 500 P.2d 1143 (1972).

Dr. Tyler's testimony was based upon medical findings and expressed in terms of medical probabilities, not mere possibilities. As he pointed out, only an autopsy would conclusively establish that Renn's condition was due to trauma. An applicant's burden to prove all essential elements of his claim is not that heavy.

The award is affirmed.

NELSON, P. J., and WREN, J., concurring.