NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MICHAEL C. MARTINKO,
*Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent,*

AMERICAN FENCE,
*Respondent Employer,*

OLD REPUBLIC INSURANCE COMPANY/BROADSPIRE,
*Respondent Carrier.*

No. 1 CA-IC 16-0009
FILED 10-27-2016

Special Action - Industrial Commission
ICA Claim No. 94088-498501
Carrier Claim No. 152-46480
The Honorable Andrew Campbell, Administrative Law Judge

**AFFIRMED**

COUNSEL

Michael C. Martinko, Phoenix
*Petitioner In Propria Persona*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent ICA*

Lundmark Barberich LaMont & Slavin, PC, Phoenix
By R. Todd Lundmark, Danielle S. Vukonich
*Counsel for Respondent Employer and Respondent Carrier*

---

## MEMORANDUM DECISION

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

---

**D O W N I E**, Judge:

**¶1**          This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision denying a petition for rearrangement filed by Michael Martinko. For the following reasons, we affirm the award.

## FACTS AND PROCEDURAL HISTORY

**¶2**          Martinko injured his cervical spine in 1994 in a work-related incident. He filed a workers' compensation claim that was accepted for benefits. In 1996, the ICA issued an award for unscheduled permanent partial disability. Martinko protested the award and requested a hearing. The parties thereafter reached a settlement agreement pursuant to which Martinko, through counsel, withdrew his hearing request. The settlement agreement stated, in pertinent part:

> [T]he parties stipulate that the applicant has not sustained a psychiatric or psychological condition causally related to his March 21, 1994 industrial injury and that he has not suffered an aggravation of a preexisting unrelated psychological or psychiatric condition causally related to his May [sic] 21, 1994 industrial injury. In entering into this stipulation, the applicant acknowledges that he is currently receiving psychiatric and psychological treatment . . . . He agrees that now is the time and place to litigate whether his psychiatric and psychological problems are, in any way, causally related to his March 21, 1994 industrial injury and he agrees that

2

they are not. He further agrees that the treatment he is currently receiving for his psychiatric or psychological non-industrial problems which include a recommendation for a chronic pain management program are not related or medically necessary to treat this March 21, 1994 injury. He acknowledges that he has financial incentive[s] to litigate these issues and has agreed to enter into this settlement instead as a resolution of these issues.

The settlement agreement also included a stipulation that Martinko had suffered no reduction in earning capacity as a result of the 1994 industrial injury:

The parties further stipulate that the applicant has no reduction in his monthly earning capacity as a result of his March 21, 1994 industrial injury because he retains the ability to work as a quality control inspector, a position which is suitable and reasonably available to him . . . .

¶3        The ICA issued an award approving the settlement agreement, stating therein that Martinko had "sustained no loss of monthly earning capacity." Pursuant to the settlement agreement, the employer and its insurance carrier paid Martinko $70,000.

¶4        In November 2014, Martinko filed a petition for rearrangement, asserting a loss in earning capacity resulting from the 1994 injury. The ICA denied the petition, and Martinko requested a hearing.

¶5        After a series of hearings, an administrative law judge ("ALJ") issued an award denying rearrangement. Martinko unsuccessfully sought review by the ICA and thereafter filed a timely petition for special action review by this Court. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

**DISCUSSION**

¶6        We consider the evidence in the light most favorable to upholding the ICA's award and will not disturb the award if it is supported by sufficient evidence. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002). We defer to the ALJ's factual findings but review his legal conclusions *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). The ALJ resolves conflicts in the evidence and may

draw any inference from the evidence that is not "wholly unreasonable." *Johnson-Manley Lumber v. Indus. Comm'n*, 159 Ariz. 10, 13 (App. 1988).

¶7            A claimant bears the burden of proving grounds for rearrangement.  *Gallegos v. Indus. Comm'n*, 144 Ariz. 1, 4 (1985). Rearrangement based on a reduction in earning capacity is appropriate under the following circumstances:

> 1.  On a showing of a change in the physical condition of the employee after such findings and award arising out of the injury resulting in the reduction . . . of the employee's earning capacity.
>
> 2.  On a showing of a reduction in the earning capacity of the employee arising out of such injury where there is no change in the employee's physical condition, after the findings and award.

A.R.S. § 23-1044(F).

¶8            Martinko first contends the 1996 ICA award was improper because he in fact sustained a psychological injury as a result of the 1994 industrial accident.  However, an ICA "order approving a settlement is the equivalent of an award." *Santiago v. Indus. Comm'n*, 193 Ariz. 369, 373, ¶ 18 (App. 1998).  A claimant may not "relitigate issues already decided at the time of the first award" in a petition for rearrangement. *Gallegos*, 144 Ariz. at 4.  "As long as the prior award is final, whatever was decided is final and so is every fact necessary to that decision. . . .  Right or wrong, the facts determined by the final order are binding." *Id.*

¶9            Martinko also argues his psychological state needed to be determined by a licensed medical professional at the time of the 1996 settlement. But he cites no authority for this proposition, and we are aware of no requirement that a medical professional evaluate a claimant's competence before the ICA approves a negotiated settlement agreement. Moreover, as explained *supra*, the 1996 ICA award is not subject to collateral attack in these rearrangement proceedings.

¶10           Martinko next contends he experienced changes in his physical condition that caused a reduction in his earning capacity.  The record, however, supports the ALJ's conclusion that Martinko failed to prove that assertion.

¶11         During the rearrangement hearings, Dr. John Beghin testified there had been "no objective change" in Martinko's condition from 1996 to 2015. *See Gallegos*, 144 Ariz. at 5 ("The question of change is to be measured by comparing the facts determined by the final findings and award with those existing at the time of the rearrangement petition."). And Martinko's treating physician, Dr. Joshua Holland, could not "offer a comparative analysis regarding [Martinko's] ability to work in 1996 at the closure of his claim versus his ability to work" at the time of the 2015 hearings.

¶12         According to Martinko, the ALJ should have considered the 2008 testimony by Dr. Edward Dohring in a different ICA proceeding to conclude that he developed myelopathy after the 1996 award. But Dr. Dohring did not testify in the rearrangement proceedings, and the record reflects he had not seen Martinko during the preceding six years. Dr. Beghin, on the other hand, did testify, and stated that he found no objective evidence of myelopathy.

¶13         Finally, Martinko contends the testimony and opinions offered by a labor market consultant about his unchanged earning capacity were unreasonable. Specifically, he argues the consultant did not take into account Dr. Dohring's 2008 testimony or certain medications Martinko contends impede his ability to work as a quality control inspector. The record, though, reflects that the consultant reached her conclusions after considering the most recent medical information about Martinko's physical restrictions and medications.

¶14         The ALJ, not this Court, assesses the credibility of witnesses and determines the weight to be given specific evidence. *See Royal Globe Ins. Co. v. Indus. Comm'n*, 20 Ariz. App. 432, 434 (1973). The record before the ALJ amply supports a determination that Martinko failed to carry his burden of proving a loss in earning capacity.

## CONCLUSION

**¶15** For the foregoing reasons, we affirm the ICA's award denying rearrangement.



AMY M. WOOD • Clerk of the Court
FILED: AA