`
NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DEVAN A. ELLENBARGER-KING, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

FRY'S FOOD AND DRUG STORES OF ARIZONA, INC., *Respondent Employer*,

FRY'S FOOD STORES OF ARIZONA, INC., *Respondent Carrier*.

No. 1 CA-IC 17-0019
FILED 12-26-2017

Special Action - Industrial Commission

ICA Claim No. 20141-490427
Carrier Claim No. 30142157566-0001
Robert F. Retzer, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Joel F. Friedman, PLLC, Phoenix
By Joel F. Friedman
*Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent ICA*

Lundmark, Barberich, LaMont & Slavin, Phoenix
By Lisa M. LaMont, Danielle S. Vukonich
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Diane M. Johnsen joined.

---

**C R U Z**, Judge:

**¶1**       This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review finding the petitioner employee ("Claimant") stationary with no permanent impairment. Two issues are presented on appeal: (1) whether the administrative law judge ("ALJ") erred by adopting Patricia Johnson, Ph.D.'s opinion to support the award; and (2) whether the ALJ made inconsistent findings when he adopted Dr. Johnson's opinion but also found Claimant credible. We find no error in the ALJ's adoption of Dr. Johnson's opinion; nor did the ALJ rule inconsistently in adopting her opinion while finding Claimant credible. We affirm the award.

## JURISDICTION AND STANDARD OF REVIEW

**¶2**       This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2) (2003), 23-951(A) (2012), and Arizona Rules of Procedure for Special Actions 10 (2009).[1] In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings but review questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

## FACTUAL AND PROCEDURAL HISTORY

**¶3**       Claimant worked for the self-insured respondent employer, Fry's Food Stores of Arizona, Inc. ("Fry's") as a cashier and customer

---

[1]       Absent material revision after the relevant dates, we cite the current version of statutes and rules.

service representative. She sustained a psychological injury on May 18, 2013, during an armed robbery at the customer service counter. Claimant filed a workers' compensation claim, which was accepted for benefits. She received psychological treatment, and following an independent psychological examination ("IPE"), her claim was closed on February 24, 2015, with no permanent impairment. Claimant timely protested, and the ALJ held four hearings and heard testimony from Claimant, her treating psychologist, Maryanna Hardy Foley, Ph.D., and independent psychological examiner, Dr. Johnson.

¶4 Claimant testified that on May 18, 2013, she was working at the customer service counter when a man walked up, pulled up his shirt to show her a gun in his waistband, and demanded cash. She placed money in the bag he handed her, and he left the store. Claimant went to the store office, reported the robbery to the store manager, and returned to work.

¶5 Claimant testified that she began to experience anxiety and stomach problems at work, and she sought treatment from Dr. Foley. Claimant worked at Fry's for a year after the robbery, and she continued to treat with Dr. Foley. In August 2014, Claimant was referred to Nancy Yeamans, Ph.D., for desensitization treatment, because of her difficulty being inside grocery stores. Claimant later went back to school to learn medical billing and became reemployed in that field.

¶6 Dr. Foley testified that she first saw Claimant in 2009. At that time, Dr. Foley diagnosed her with attention deficit disorder ("ADD"), depression, and post-traumatic stress disorder ("PTSD"), rooted in Claimant's childhood neglect by her opioid-addicted parents. Dr. Foley treated Claimant with anti-depressant and ADD medications. She last saw Claimant before the robbery on April 21, 2011. At that time, Claimant was experiencing stress at work, was somewhat depressed, and was not taking her ADD medication.

¶7 Dr. Foley next saw Claimant on May 29, 2013, after the robbery, and diagnosed Claimant with an acute stress disorder. Claimant returned to see Dr. Foley in June 2013, after the robber had been caught. She reported feeling relieved that he was in custody, and that she had been transferred to work in the store bakery. Claimant also requested medication to help with her ADD. At her August 6, 2013 appointment, Claimant reported dissatisfaction with her job due to personnel issues.

¶8 Claimant returned to see Dr. Foley on May 13, 2014, after learning that the robber had been released from jail. She told Dr. Foley that she was very depressed and had started to feel much worse. She was having difficulty with focus and concentration and was experiencing mood swings, sleep disturbances, and flashbacks.

¶9 Dr. Foley testified that these were new symptoms that occurred on the anniversary of the robbery, and the anniversary date had caused Claimant to reexperience the traumatic event. The doctor diagnosed PTSD related to the 2013 robbery. She last saw Claimant on December 30, 2014. At that time, it was Dr. Foley's opinion that although Claimant wanted to return to work, she was not emotionally ready.

¶10 Dr. Johnson testified that she examined Claimant twice, and she authored two IPE reports: July 1, 2014 and February 24, 2015. Dr. Johnson first saw Claimant on July 1, 2014. She received a history of the robbery, reviewed Dr. Foley's treatment records, administered objective testing, and performed a psychological examination.

¶11 At that time, Dr. Johnson diagnosed adjustment disorder with mixed anxiety and depression related to the robbery and preexisting ADD and PTSD. She reported that "even though [Claimant] had pre-existing PTSD along with possible undiagnosed depression and anxiety, this underlying disorder has been exacerbated by the robbery, failure to get treatment, anniversary reaction, and a subsequent robbery." Dr. Johnson recommended medication and treatment with a therapist skilled in trauma recovery.

¶12 Dr. Johnson next saw Claimant on February 24, 2015. She took an interim history, reviewed additional medical records from Claimant's primary care physician and the trauma therapist, Dr. Yeamans, administered additional psychological testing, and conducted an interview. It was Dr. Johnson's opinion that Claimant had received appropriate comprehensive treatment for her industrially-related adjustment disorder, that it was stationary as of February 24, 2015, with no permanent impairment and without need for supportive care.

¶13 Dr. Johnson also testified, however, that Claimant had preexisting, underlying psychological problems that continued to need treatment. These preexisting conditions included ADD, PTSD, generalized anxiety disorder, and the need to rule out a recurrent major depressive disorder or a personality disorder. Dr. Johnson reported, "It is felt that her

4

current, somewhat inexplicable level of dysfunction is related to her preexisting and unrelated psychiatric disorders."

**¶14** Following the hearings, the ALJ entered an award for temporary disability benefits and, finding no evidence of permanent impairment related to the industrial event, closed the case for continuing or permanent benefits, effective February 24, 2015. Claimant timely requested administrative review, and the ALJ supplemented his findings, specifically noting he found Claimant to be credible, and affirmed the award. This Special Action followed.

## DISCUSSION

**¶15** Claimant first argues that the ALJ erred by adopting Dr. Johnson's testimony to support the award, because Dr. Johnson purportedly reversed her initial opinion and withheld documentation during discovery. The ALJ is the sole judge of witness credibility. *Holding v. Indus. Comm'n*, 139 Ariz. 548, 551 (App. 1984). It is his duty to resolve all conflicts in the evidence and to draw all warranted inferences. *Malinski v. Indus. Comm'n*, 103 Ariz. 213, 217 (1968) (citation omitted). Where more than one inference may be drawn, the ALJ is at liberty to choose either and this court will not disturb his conclusion unless it is wholly unreasonable. *Id.* (citation omitted). Further, the testimony of the treating physician is not necessarily entitled to greater weight than that of an independent medical examiner. *Walters v. Indus. Comm'n*, 134 Ariz. 597, 599 (App. 1982).

**¶16** In this case, Dr. Johnson evaluated Claimant twice. At her first examination, the doctor found that Claimant had preexisting psychological conditions that were aggravated by the armed robbery at work. She diagnosed Claimant with an industrially-related adjustment disorder and recommended ongoing psychological treatment. By the time of Dr. Johnson's second evaluation eight months later, Claimant had received the recommended psychological treatment. Dr. Johnson opined that the aggravation caused by the robbery had been comprehensively treated, and Claimant's only remaining psychological conditions were those that preexisted her industrial injury.[2] We conclude that Dr. Johnson

---

[2] A symptomatic aggravation of a preexisting condition that requires additional medical treatment or results in additional disability can constitute a compensable claim. *See Indus. Indem. Co. v. Indus. Comm'n*, 152 Ariz. 195, 199 (App. 1986); *see also Mandex v. Indus. Comm'n*, 151 Ariz. 567, 570 (App. 1986). But, a claimant has the burden of showing more than a

did not "reverse" her opinion on causation, but rather that her opinion after her February 2015 examination of Claimant was based on changed conditions, including the passage of time, further evaluative testing, and the results of the interim therapy. Based on these factors, Dr. Johnson's opinion was that the exacerbating effects of the robbery on Claimant's pre-existing psychological conditions had resolved, and that her need for continuing psychological treatment and/or therapy was solely related to her preexisting, non-industrially caused conditions.

¶17        Regarding any withheld documentation, Claimant's attorney first requested Dr. Johnson's hand-written patient interview notes and the actual objective test materials and data after the ICA hearings concluded. Despite the untimely request,[3] Dr. Johnson provided additional documentation and agreed to appear at another hearing on December 7, 2016, to allow Claimant's attorney an opportunity for additional cross-examination. Claimant's attorney failed to appear for the requested hearing, and the ALJ considered the case submitted for decision. On this record, we find Claimant has waived any issue concerning the completeness of the medical or psychological records before the ALJ, and further find no error in the ALJ's adoption of Dr. Johnson's opinion.

¶18        Claimant next argues that the ALJ made inconsistent findings when he both found Claimant credible and adopted Dr. Johnson's testimony. When the causal relationship between the industrial accident and the injury is not obvious, it must be established by expert medical testimony. *See, e.g.*, *McNeely v. Indus. Comm'n*, 108 Ariz. 453, 455 (1972) (recognizing that where causation is peculiarly within the knowledge of a medical expert, the medical expert's opinion must be relied upon). A medical opinion must be based on findings of medical fact to support an award. *Royal Globe Ins. Co. v. Indus. Comm'n*, 20 Ariz. App. 432, 434 (1973). These findings come from a claimant's history, medical records, diagnostic tests, and examinations. *See id.*

---

temporary aggravation of an underlying condition; he must show the industrial injury caused an aggravation which has not terminated and continues to contribute to his ongoing disability. *Arellano v. Indus. Comm'n*, 25 Ariz. App. 598, 604 (1976).

[3]        *See* A.A.C. R20-5-155 (rules for submitting evidence for consideration in an ICA proceeding).

**¶19** Here, the issue was whether Claimant's ongoing psychological problems were related to her industrial injury. Claimant's own subjective opinion concerning such connection is not dispositive. Further, it is not inconsistent for the ALJ to have found Claimant's description of the events and her symptoms to be credible, and at the same time adopt Dr. Johnson's evaluation of those statements and symptoms and her professional opinion as to the point at which any effects of the industrial episode on Claimant's underlying psychological conditions had ceased, and as to whether the industrial episode resulted in any permanent impairment.

## CONCLUSION

**¶20** For all the foregoing reasons, we affirm the award.



AMY M. WOOD • Clerk of the Court
FILED: AA