NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARTEN TRANSPORT, *Petitioner Employer*,

ZURICH AMERICAN INSURANCE COMPANY, *Petitioner Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

BRIAN P. QUERCIONE, *Respondent Employee*.

No. 1 CA-IC 17-0041
FILED 3-6-2018

Special Action - Industrial Commission

ICA Claim No. 20160-220006
Carrier Claim No. 15D30G550393
Anthony F. Halas, Administrative Law Judge (Retired)

**AWARD AFFIRMED**

COUNSEL

Hoffman Kelley Lopez LLP, Scottsdale
By Michelle D. Lopez
*Co-Counsel for Petitioner Employer and Petitioner Carrier*

Norton & Brozina, P.C., Phoenix
By Christopher S. Norton
*Co-Counsel for Petitioner Employer and Petitioner Carrier*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent*

Snow, Carpio & Weekley, PLC, Phoenix
By Dennis R. Kurth
*Counsel for Respondent Employee*

---

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**W I N T H R O P**, Presiding Judge:

**¶1** This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for a compensable claim. One issue is presented on appeal: whether the administrative law judge ("ALJ") legally erred by adopting the opinion of Ralph Purcell, M.D., to support the award for a compensable claim. Because the ALJ's determinations are reasonably supported by substantial evidence, we affirm the award and decision upon review.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2** At the time of his industrial injury, the respondent employee ("the claimant") worked as a truck driver for the petitioner employer, Marten Transport ("Marten"). Before starting employment, the claimant was administered an electrodiagnostic functional assessment ("EFA") examination, which measures and records the electrical activity produced by skeletal muscles and other soft-tissue structures, both at rest and during activity, and also provides a functional assessment with regard to lifting, pulling, pushing, gripping, and pinch strength. The test is designed, in part, to provide a "baseline" soft-tissue evaluation against which a subsequent EFA can be measured after an alleged work-related injury.

---

[1] In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings but review questions of law *de novo*. *See Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We consider the evidence in the light most favorable to upholding the award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

¶3 A few months later, while pulling himself up into a trailer, the claimant felt a sharp stabbing pain in his left shoulder. He reported the injury to his supervisor and, as directed, filed a workers' compensation claim. A follow-up EFA was performed and, based on the comparative results, the claim was denied for benefits. The claimant timely requested an ICA hearing, and the ALJ held hearings at which the claimant; his treating orthopedic surgeon, Dr. Purcell; and an electrodiagnostic testing expert, MaryRose Cusimano-Reaston, Ph.D., testified.

¶4 The claimant maintained he had sustained an injury to his shoulder in the course and scope of his employment. Marten maintained the claimant had an undisclosed, preexisting, symptomatic rotator cuff injury, and his symptoms and medical findings were related to the preexisting, non-work-related condition, which was not exacerbated by the work event of pulling himself into the trailer.

¶5 The claimant testified he was hired by Marten in September 2015. As noted above, he underwent physical testing as part of the hiring process, including the "baseline" EFA. The claimant testified that, before the December 2015 industrial event, he had not experienced any problems with his left shoulder.[2] Following the shoulder injury, the claimant received diagnostic and conservative care for his left shoulder from his primary care physician and orthopedic specialists at the CORE Orthopedic Institute ("CORE").

¶6 Dr. Purcell, a board-certified orthopedic surgeon who is fellowship trained in upper extremity surgery, testified regarding his multiple evaluations of the claimant. The claimant provided a history of the industrial injury and reported having had no prior shoulder problems. Since the injury, the claimant reported having persistent pain in the front and back of his left shoulder, with weakness and decreased sensation from his left elbow down to his fifth finger.

¶7 On examination, Dr. Purcell documented weakness and tenderness in the left shoulder, and diminished range of motion and sensation in the ulnar nerve distribution. He stated that the claimant's MRI

---

[2] Marten later discovered through review of past medical records that the claimant had in the past sustained other work-related injuries, which he did not disclose in his employment application. His employment with Marten was terminated on that basis.

showed multiple abnormal findings, many of which preexisted the industrial injury. Dr. Purcell opined that the claimant had an "acute on chronic" rotator cuff tear, in which the industrial injury had worsened the claimant's preexisting asymptomatic rotator cuff tear and had caused it to become significantly symptomatic.

¶8 Dr. Purcell was also asked about the claimant's EFA testing. He questioned the validity of EFA testing and its ability to extrapolate an injury versus a non-injury based on electromyographic findings. More importantly, Dr. Purcell explained there is nothing in the EFA study that identifies an acute versus a chronic rotator cuff tear. The doctor noted that, in his experience, rotator cuff tears are often asymptomatic for a period of months or years before becoming symptomatic. Dr. Purcell opined that, to a reasonable degree of medical probability, the claimant had a preexisting, chronic rotator cuff tear in his left shoulder that became extended and acutely symptomatic when he pulled himself into the trailer on the date in question. Simply stated, it was Dr. Purcell's opinion that the industrial event constituted "the straw that broke the camel's back." Dr. Purcell also noted that his opinion in this regard—that the claimant had sustained an "acute on chronic" rotator cuff tear—was consistent with the diagnostic opinion reached by the CORE orthopedic expert who evaluated the claimant after the injury.

¶9 Dr. Cusimano-Reaston testified she is a psychologist with a certificate in electrodiagnostic testing and is "the inventor and hold[s] the FDA registration for the technology and the predicate technology" for the EFA.[3] She has worked on the EFA's development for approximately twenty years.

¶10 Dr. Cusimano-Reaston testified that the EFA is a combination of an electromyography, range of motion testing, and a functional assessment. She stated that 35,000 to 40,000 EFA tests have been performed and the EFA has proven to be reliable, and characterized the EFA as "the gold standard" for determining the nature and extent of physical injuries. She stated it is not necessary for a physician to examine a patient to obtain

---

[3] A non-medical witness may offer expert testimony if he or she possesses the necessary qualifications to be deemed an expert on the subject. *Madison Granite Co. v. Indus. Comm'n*, 138 Ariz. 573, 577-78 (App. 1983). In *Madison Granite*, this court held that the weight to be given the testimony of an expert witness who is not a medical doctor is solely within the discretion of the ALJ. *Id.* at 577 n.3.

an accurate EFA test. Instead, the test can be performed by a trained technician.

¶11  Dr. Cusimano-Reaston further testified that, in this case, she had reviewed the claimant's EFA test results with a board-certified neurosurgeon. Based on her comparison of the claimant's pre-employment and post-injury EFA test results, she opined that it was highly unlikely the claimant was, as he claimed, asymptomatic before the industrial injury. In Dr. Cusimano-Reaston's opinion, not only did the claimant's condition exist before his employment with Marten, but the post-event EFA study indicated the condition of the left rotator cuff area had improved rather than worsened.

¶12  The ALJ resolved the conflict in medical opinion and entered an award for a compensable claim. The ALJ specifically found the claimant credible, and he adopted Dr. Purcell's testimony. Marten timely requested administrative review, but the ALJ summarily affirmed the award.

¶13  Marten next brought this timely petition for special action. We have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(2) (2016) and 23-951(A) (2012), and Rule 10 of the Arizona Rules of Procedure for Special Actions.

## ANALYSIS

¶14  On appeal, Marten argues the ALJ erred by finding a compensable claim because the claimant's EFA testing "clearly showed" no additional injury to his left shoulder following the industrial incident. It is the claimant's burden to prove all elements of a compensable claim. *Toto v. Indus. Comm'n*, 144 Ariz. 508, 512 (App. 1985).

¶15  An employer must take an employee "with whatever peculiar vulnerabilities to injury the employee may have." *Murphy v. Indus. Comm'n*, 160 Ariz. 482, 486 (1989) (quoting *Kelly's Case*, 477 N.E.2d 582, 584 (Mass. 1985), *superseded by statute as stated in Tennaro v. Ryder Sys., Inc.*, 832 F. Supp. 494, 500 (D. Mass. 1993)). A symptomatic aggravation of a preexisting condition that requires additional medical treatment or results in additional disability can constitute a compensable claim. *See Indus. Indem. Co. v. Indus. Comm'n*, 152 Ariz. 195, 199 (App. 1986).

¶16  If the result of an industrial injury is not clearly apparent to a layman, expert medical testimony is required. *W. Bonded Prods. v. Indus. Comm'n*, 132 Ariz. 526, 527 (App. 1982). A medical opinion must be based on findings of medical fact to support an award. *Royal Globe Ins. Co. v. Indus.*

*Comm'n*, 20 Ariz. App. 432, 434 (1973).  These findings may come from the claimant's history, medical records, diagnostic tests, and examinations.  *See id.*; *see also Spector v. Spector*, 17 Ariz. App. 221, 226 (1972) (recognizing that a physician may also base an opinion entirely on a personal examination and observation of a patient, or in part on the history as related to the physician by the patient).

¶17         The ALJ "is the sole judge of witness credibility."  *Holding v. Indus. Comm'n*, 139 Ariz. 548, 551 (App. 1984).  It is the ALJ's duty to resolve all conflicts in the evidence and draw all warranted inferences.  *Malinski v. Indus. Comm'n*, 103 Ariz. 213, 217 (1968) (citation omitted).  In resolving medical conflicts, the ALJ may consider the qualifications and backgrounds of the expert witnesses and their experience in diagnosing the type of injury incurred, as well as the diagnostic methods used.  *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988).  This court has generally declined to dictate what diagnostic tools a physician must use in reaching his or her opinion.  *See Castillo v. Indus. Comm'n*, 24 Ariz. App. 315, 316 (1975).

¶18         In this case, the ALJ explicitly found the claimant credible.  As it relates to the validity of the medical opinion adopted by the ALJ, the record reflects that Dr. Purcell relied on the claimant's history, performed multiple physical examinations, and reviewed the claimant's industrially related diagnostic and treatment records, which provided him with an adequate foundation for his opinion.  We need not decide whether a comparative pre-employment and post-industrial-event EFA analysis is a reliable way to evaluate medical causation or compensability, or is a better diagnostic tool than the more traditional medical evaluations performed by Dr. Purcell and the other physicians who diagnosed an underlying but essentially asymptomatic condition that was aggravated and became symptomatic due to the industrial event.  The ALJ resolved the medical conflict in favor of the claimant, and the ALJ's determinations are reasonably supported by substantial evidence.

**CONCLUSION**

**¶19** We affirm the ALJ's award and decision upon review finding the claimant's claim compensable.



AMY M. WOOD • Clerk of the Court
FILED: AA