NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ABDULAHAD AL JAJO, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

AARROWHEAD SECURITY INC VETSEC PROTECTION AGENCY,
*Respondent Employer*,

BENCHMARK INSURANCE, *Respondent Carrier*.

No. 1 CA-IC 25-0019

FILED 05-05-2026

Special Action - Industrial Commission
ICA Claim No. 20211480478
Carrier Claim No. 7176043
The Honorable Karen E. Karl, Administrative Law Judge

**AFFIRMED**

COUNSEL

Abdulahad Al Jajo, Peoria
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Lundmark Barberich La Mont & Puig PC, Phoenix
By Kevin E. Karges, Austin M. Vale
*Counsel for Respondent Employer and Insurance Carrier*

---

**MEMORANDUM DECISION**

Chief Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Veronika Fabian joined.

---

**H O W E**, Judge:

¶1 Abdulahad Al Jajo appeals an Industrial Commission of Arizona ("ICA") decision denying him disability benefits. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 In 2021 Al Jajo fractured his hip working as a security guard for Arrowhead Security Inc., doing business as Vet-Sec Protection Agency ("VetSec"). After an evidentiary hearing, the Administrative Law Judge ("ALJ") found that Al Jajo's "condition became medically stationary with an unscheduled 22% permanent impairment of the left lower extremity" and closed his claim. The ICA Claims Division then established that Al Jajo "sustained a reduction in monthly earning capacity, entitling [him] to the sum of $33.79 per month." He requested a hearing to challenge that determination.

¶3 At the start of the hearing, the ALJ clarified that the only issue for consideration was Al Jajo's earning capacity: his "ability to earn a living on the open and competitive labor market." The ALJ also reminded Al Jajo during the hearing that his medical condition, specifically his request for a hip replacement, was not at issue.

¶4 Dr. David Ott, an orthopedic surgeon who conducted two independent medical examinations ("IMEs") of Al Jajo testified. He testified, consistent with his written reports, that Al Jajo "could work in a sedentary or light duty status, which would include work as a security guard" so long as his work was restricted. Specifically, he felt that Al Jajo's work should be limited to no heavy lifting or running, walking no farther than 100 yards at a time, and walking no more than 1000 yards per shift.

Sam Fullam, VetSec's Director of Technology Solutions, testified that VetSec would allow Al Jajo to return to work and accommodate the restrictions recommended by Ott. Fullam said that VetSec "would love to have him back" and that the pay for the position had increased. VetSec made a written offer of employment to Al Jajo assuring that they would accommodate his medical restrictions.

**¶5**　　　　Al Jajo represented himself during the hearing. He called Brett Heath, a labor market consultant, as a witness. Heath originally issued a report finding that Al Jajo was wholly disabled and thus had a total loss of earning capacity. But at the hearing Heath agreed that if VetSec offered Al Jajo his former security job at the same or higher pay rate with the restrictions recommended by Ott, he would not have any reduction in earning capacity. Another labor market consultant, D. Nolan McKelvey, also testified that Al Jajo had no loss of earning capacity because he could return to work as a security guard with VetSec, who would accommodate his medical restrictions. During the hearing, Al Jajo stated that he "cannot work more than three hours a week." He testified that he returned to work for VetSec one day in a security job that required him to sit but could not continue longer than three hours because of pain. He also testified that he had not looked for work since the injury.

**¶6**　　　　The ALJ found that Al Jajo had no loss of earning capacity because he could return to his job with the same hours and pay with accommodation for the recommended physical restrictions. Al Jajo requested review. The ALJ reconsidered the evidence and affirmed the decision. Al Jajo then filed this statutory special action for judicial review of the ICA decision. We have jurisdiction under A.R.S. §§ 12-120.21(B), 23-951(A).

## DISCUSSION

### I.　　Waiver

**¶7**　　　　After Al Jajo filed his opening brief, Respondents moved to strike it for not complying with Arizona Rule of Civil Appellate Procedure ("Rule") 13(a)(7) because "it [did] not contain any legal argument or citations to the record." This Court denied the motion.

**¶8**　　　　In the answering brief, Respondents again argue that Al Jajo has waived appellate review by not complying with Rule 13(a)(7)(A). They claim Al Jajo's brief "does not contain any legal argument." Although his argument has its shortcomings, Al Jajo argues his evidence was sufficient and the decision is deficient because it did not address his "core claims."

True, Al Jajo's opening brief lacks citations to the record, but the record is not extensive and we had no difficulty identifying the evidence on which the ALJ relied. Thus, we exercise our discretion to decide Al Jajo's appeal on the merits. *Clemens v. Clark*, 101 Ariz. 413, 414 (1966) (courts are inclined to decide cases on their merits); *Lederman v. Phelps Dodge Corp.*, 19 Ariz. App. 107, 108–10 (1973) (where an opening brief was "grossly deficient," the court was "loathe to penalize appellant by complete rejection" but, after considering the merits, affirmed the lower court judgment).

**¶9** We do not address Al Jajo's other arguments, such as the need for a hip replacement and complaints about the attorney who represented him in the pre-hearing phase of the case, because they are not relevant to the issue before us; whether the evidence supports the ICA decision. *See* A.R.S. § 23-951(B) (review of an ICA decision is limited to whether the ICA acted within its authority and whether the factual findings support the decision).

## II.  Evidence Supports the ICA Decision

**¶10** In reviewing the ICA's decision, we defer to the ALJ's factual findings but review legal questions de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270 ¶ 14 (App. 2003). The ALJ must resolve conflicting evidence and "determine which of the conflicting testimony is more probably correct." *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398 (1975). When the ALJ resolves such a conflict, we will not disturb that conclusion unless wholly unreasonable. *Royal Globe Ins. Co. v. Indus. Comm'n*, 20 Ariz. App. 432, 434 (1973).

**¶11** A request for a hearing to protest the Claims Division determination of loss of earning capacity effectively vacates the Claims Division's findings and award. *Parra v. Indus. Comm'n*, 213 Ariz. 265, 268 ¶ 12 (App. 2006). The ICA ALJ must conduct an independent analysis of the evidence to determine loss of earning capacity. *Id*.

**¶12** Al Jajo's claim is for the loss of *all* earning capacity due to his work injury. He had the burden to prove loss of earning capacity and, if found, the extent of the loss. *Young*, 204 Ariz. at 270 ¶ 18; *see also Schuck & Sons Const. v. Indus. Comm'n*, 213 Ariz. 74, 78 (App. 2006). To show loss of earning capacity, an injured worker bears the burden to show an "inability to perform the job at which he was injured and to get other work which he can perform in light of his physical impairments." *Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 580 (1983). Generally, this burden is met by showing that the injury prevents a return to the prior employment and that there has

been a reasonable effort to find work. *Id.*; *Weidmaier v. Indus. Comm'n*, 121 Ariz. 127, 130 (1978).

**¶13** Al Jajo failed to convince the ALJ that he cannot return to his prior employment. Evidence supports the ALJ's conclusion that Al Jajo could return to his former position and VetSec would implement the accommodation recommended by Dr. Ott, resulting in no lost earning capacity. Al Jajo did not present medical evidence or expert testimony contradicting Dr. Ott's opinion that he could work with restrictions. Although he testified about a single instance in which he tried but failed to work longer than three hours, the ALJ could reasonably conclude that this testimony did not show Al Jajo could not work at his former position with appropriate restrictions. Given the evidence presented, the ALJ could also reasonably reject Al Jajo's repeated statements that he could not work more than three hours per week. And no evidence shows that Al Jajo tried to find work within this "three hours per week" limitation.

**¶14** Al Jajo failed to show he could not return to the job at which he was injured. The ALJ addressed his claim sufficiently in the decision. The conclusion that Al Jajo could work at his former job with the recommended accommodation is supported by evidence in the record and is reasonable. *See Royal Globe Ins. Co.*, 20 Ariz. App. at 434.

## CONCLUSION

**¶15** We affirm.

